Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/13/2020 08:11 AM CST

Jennifer J. Braun, appellee, v.
Corey L. Braun, appellant.
___ N.W.2d ___

Filed August 21, 2020.    No. S-19-880.

1.  **Contempt: Appeal and Error.** In a civil contempt proceeding where
    a party seeks remedial relief for an alleged violation of a court order,
    an appellate court employs a three-part standard of review in which (1)
    the trial court's resolution of issues of law is reviewed de novo, (2) the
    trial court's factual findings are reviewed for clear error, and (3) the trial
    court's determinations of whether a party is in contempt and of the sanc-
    tion to be imposed are reviewed for abuse of discretion.
2.  **Divorce: Judgments: Appeal and Error.** The meaning of a divorce
    decree presents a question of law, in connection with which an appellate
    court reaches a conclusion independent of the determination reached by
    the court below.
3.  **Parties: Jurisdiction.** If necessary parties to a proceeding are absent,
    the district court has no jurisdiction to determine the controversy.
4.  **Parties: Words and Phrases.** An indispensable party is one whose
    interest in the subject matter of the controversy is such that the contro-
    versy cannot be finally adjudicated without affecting the indispensable
    party's interest, or which is such that not to address the interest of the
    indispensable party would leave the controversy in such a condition
    that its final determination may be wholly inconsistent with equity and
    good conscience.
5.  **Divorce: Property Settlement Agreements: Final Orders.** A decree is
    a judgment, and once a decree for dissolution becomes final, its mean-
    ing, including the settlement agreement incorporated therein, is deter-
    mined as a matter of law from the four corners of the decree itself.
6.  **Contempt: Words and Phrases.** Willful disobedience is an essential
    element of civil contempt; "willful" means the violation was committed
    intentionally, with knowledge that the act violated the court order.
7.  **Words and Phrases: Appeal and Error.** Willfulness is a factual deter-
    mination to be reviewed for clear error.

8. **Contempt.** In a civil contempt proceeding, for the sanction to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end.

9. **Contempt: Sentences.** The sanction in a civil contempt proceeding is both remedial and coercive, and when a jail sentence is imposed as a sanction, the contemnor must carry the keys to their jail cells in their own pocket.

10. \_\_\_\_: \_\_\_\_. A jail sanction in a civil contempt proceeding is conditioned upon the contemnor's continued noncompliance with the court order, and the purge plan must allow the contemnor to mitigate or avoid the sanction through compliance.

Appeal from the District Court for Sheridan County: Travis P. O'Gorman, Judge. Affirmed.

Sterling T. Huff, P.C., L.L.O, for appellant.

Jennifer J. Braun, pro se.

On brief, Andrew W. Snyder, of Chaloupka, Holyoke, Snyder, Chaloupka & Longoria, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

Corey L. Braun appeals from an order finding him in willful contempt of court for failing to hold his ex-wife, Jennifer J. Braun, harmless from joint mortgage debt on the marital home Corey was awarded in the decree. As a sanction, the court imposed a delayed jail sentence and a purge plan that allowed Corey to purge himself of contempt by either refinancing the mortgage in his own name by a date certain or selling the property. Finding no error, we affirm.

## I. BACKGROUND

Corey and Jennifer were married in 2005. A child was born to the marriage in 2007, and in 2012, Jennifer filed for divorce. In the dissolution proceeding, the parties generally agreed on

the equitable division of their assets and debts; a trial was held on all remaining issues.

## 1. Divorce Decree

In February 2013, the court entered a decree dissolving the marriage. As relevant to the issues on appeal, the parties' marital home in Gordon, Nebraska, was valued at $112,000. The home was awarded to Corey by agreement of the parties, subject to the existing mortgage debt. The decree generally ordered each party to be responsible for the debts associated with the property they were awarded and to hold the other harmless from such debt. As relevant to the issues on appeal, the decree provided: "**Debts:** [Corey] agrees to hold [Jennifer] harmless from any debt associated with the property he has been awarded, including payment of attorneys fees should any contempt action arise from his failure to hold her harmless of these debts."

## 2. Contempt Proceedings

On January 11, 2019, Jennifer filed what she captioned a "Complaint to Modify and for Contempt." This pleading alleged that Corey had willfully failed to hold her harmless from the mortgage debt on the home, and it asked that he be held in contempt of court. The pleading also sought to hold Corey in contempt of court for failing to pay court-ordered childcare expenses, and it requested a modification of Corey's child support obligation due to a material change in circumstances.

The court set trial on all matters for May 1, 2019. Both parties appeared with counsel and offered evidence. We summarize only that evidence pertaining to the hold harmless provision, as no error has been assigned to the trial court's rulings on child support or childcare expenses.

### (a) Jennifer's Testimony

Jennifer testified that after the decree was entered, she signed a quitclaim deed on the home, but her name was still

on the mortgage note. Jennifer admitted she had not been required to make any mortgage payments on the home since the decree was entered, but she testified that Corey had failed to remain current on the mortgage and that his failure was adversely affecting her finances. She explained that she had received late notices and foreclosure notices from the mortgage company and that her credit report showed she was delinquent on the home mortgage.

Jennifer testified her credit score had historically been around 780 or 800, and in the summer of 2018 she had an application for a credit card rejected, which had not happened before. She checked her credit score and learned it had fallen to 620 or 640, despite the fact she was current on the only debts she had. She also testified she was unable to qualify for a loan to purchase a home because of her current credit score.

Jennifer testified she had repeatedly asked Corey to refinance the mortgage in his own name, but he told her he was not able to qualify for refinancing due to his previous bankruptcies and his low credit score. According to Jennifer, the mortgage company had not yet foreclosed on the home, but Corey had been "dancing around foreclosure." Jennifer testified the mortgage company had "set up multiple payment plans with him, he makes a couple payments, and then he stops making payments, and then he calls in and they make new payment arrangements, he'll make a couple payments, and then he fails. It's a cycle."

Jennifer believed the only way to protect her finances from Corey's chronic failure to keep the mortgage debt current was to get her name off the mortgage altogether. She asked that Corey be ordered to refinance the home in his name only and that if he was not able to refinance, he be ordered to sell the home.

## (b) Corey's Testimony

Corey testified the balance on the mortgage note was close to $70,000, and he agreed that Jennifer remained obligated on that note. He testified that about a year earlier, he attempted

to refinance the mortgage on the home but was unable to get a loan because of his credit score. He had not attempted to refinance recently, because his credit score had not improved.

Corey estimated the current value of the home was around $120,000 to $150,000, and he agreed he would be able to sell the home for more than is owed on the mortgage. Corey admitted that since 2018, he had been behind on the mortgage payments, but stated that a few months before trial he had arranged a new payment plan and was current on payments under that new plan. He testified the mortgage was still in arrears by about $4,900.

Corey did not want to sell the home, but he did not think it was possible for him to refinance the mortgage debt immediately. He testified he had obtained a good-paying job and expected to be able to keep making payments under the new payment plan, and he was hopeful that he could refinance the home "sooner [rather] than later."

Corey admitted the decree required him to hold Jennifer harmless from any debt associated with the home. And he generally understood the hold harmless provision meant that no harm should come to Jennifer as a result of the debts he was ordered to pay, including harm related to a reduction in her credit rating. But Corey generally testified that he did not think his delinquency on the mortgage had harmed Jennifer.

### 3. Trial Court's Order

On May 16, 2019, the trial court entered an order ruling on all pending matters. As relevant to the contempt issues on appeal, the court expressly found that Corey had consistently failed to keep the mortgage current and that his conduct had resulted in financial damage to Jennifer in the form of damage to her credit.

The court described the "more difficult" question as whether Corey's conduct amounted to a violation of the hold harmless provision in the decree. The court framed the question as whether financial harm or injury, such as damage to one's credit, is the type of harm that falls within the scope of a

standard hold harmless provision in a divorce decree where one party has been ordered to assume responsibility for a joint debt. The court noted it had located no reported decisions in Nebraska addressing the issue, but that other jurisdictions have held that a hold harmless provision includes protection from financial injury such as damage to credit. The court discussed two cases in particular: *Long v. McAllister-Long*[1] and *Eaton v. Grau.*[2]

In *Long*, the wife sought to hold her former husband in contempt of court for violating a provision in the decree requiring him "to hold [the wife] harmless" from the joint mortgage debt and other joint debts.[3] The wife alleged the husband's failure to make timely payments had a harmful effect on her credit rating. The Tennessee appellate court considered the plain language and broad purpose of the hold harmless provision, and concluded it was intended to operate as both indemnity against liability and indemnity against loss. It therefore concluded the hold harmless provision "required [the husband] to pay these debts in a timely manner in order to prevent [the wife] from being harmed," and it reasoned "risking adverse effects on her credit rating" was a type of harm that was to be prevented.[4]

In *Eaton*, the parties' stipulated divorce decree awarded the marital home to the husband and made him solely responsible for paying the joint mortgage debt.[5] The decree included a hold harmless provision which ordered the husband to "'indemnify and hold the Wife harmless from any and all further obligations from ownership of the property,'" but it did not require the husband to refinance in his own name.[6] The wife later

---

[1] *Long v. McAllister-Long*, 221 S.W.3d 1 (Tenn. App. 2006).

[2] *Eaton v. Grau*, 368 N.J. Super. 215, 845 A.2d 707 (2004).

[3] *Long, supra* note 1, 221 S.W.3d at 6.

[4] *Id*. at 12.

[5] *Eaton*, *supra* note 2.

[6] *Id.* at 219, 845 A.2d at 710 (emphasis omitted).

moved to modify the decree to require the husband to either refinance the mortgage or sell the home, alleging he had failed to keep the mortgage current and foreclosure proceedings had damaged her credit rating. The trial court denied her modification request, reasoning that although a hold harmless provision could be broad enough to protect against damage to credit scores, the language of the provision selected by the parties was narrow and only encompassed protection from "'further obligations.'"[7] On appeal, the New Jersey appellate court affirmed, reasoning that even if it assumed the hold harmless provision protected against financial harm to the wife's credit rating, she had failed to prove she sustained such injury and thus had not shown exceptional circumstances as would entitle her to modification of the decree.

In the instant case, the trial court found the plain language of the hold harmless provision in the decree was not materially different from that considered in *Long*, and it concluded:

Corey's obligation [under the hold harmless provision] plainly extends beyond making mortgage payments so that Jennifer does not become obligated to make payments herself; it also requires Corey to fulfill the parties' joint obligations under the mortgage so as to prevent other fiscal injury that might foreseeably befall Jennifer, such as the kind of damage to her credit that could result from payments that are chronically late.

The court found Corey in willful contempt of court "for failing to make timely payments on the mortgage he was ordered to pay" because such conduct "failed to hold Jennifer harmless on that debt which has resulted in severe damage to [her] credit rating." It sentenced Corey to serve 10 days in jail, commencing on September 3, 2019 (approximately 4 months in the future), and it preapproved work release so that Corey could "continue to work and pay his bills." Finally, the court's order provided that Corey could purge himself of contempt and avoid the jail sentence if, on or before September 3, 2019, he

---

[7] *Id.*

refinanced or sold the home "so further damage to Jennifer's credit does not occur."

Corey timely appealed, and we moved the case to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Corey assigns, summarized, that the trial court erred in determining his conduct violated the hold harmless provision and in ordering that he either refinance the mortgage or sell the home.

## III. STANDARD OF REVIEW

[1] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.[8]

[2] The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.[9]

## IV. ANALYSIS

### 1. MORTGAGE COMPANY NOT
### INDISPENSABLE PARTY

Before considering the merits of Corey's assignment of error, we quickly dispense of a preliminary jurisdictional issue he raised in his brief. Corey suggests the contempt order affected the rights of the mortgage company, thereby making

---

[8] *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018).

[9] *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019).

the mortgage company an indispensable party to the contempt proceedings. He argues that because the mortgage company was not made a party, both the trial court and this court lack jurisdiction.

[3] If necessary parties to a proceeding are absent, the district court has no jurisdiction to determine the controversy.[10] But there is no merit to Corey's suggestion that the mortgage company was an indispensable party to the contempt proceedings here.

[4] An indispensable party is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.[11] Here, the mortgage company's interests and rights are not affected, changed, or modified by final adjudication of the contempt controversy in this case, and the mortgage company's presence as a party was not necessary either to resolve whether Corey was in contempt or to fashion an appropriate remedy in the event he was found in contempt. The mortgage company was not an indispensable party to the contempt proceedings, and Corey's argument to the contrary is meritless.

## 2. No Abuse of Discretion in Contempt Determination or Purge Plan

Corey's single assignment of error is broadly drafted, and we understand it to be challenging both the trial court's determination that he was in contempt and its determination of the sanction to be imposed. We review both such determinations

[10] *American Nat. Bank v. Medved*, 281 Neb. 799, 801 N.W.2d 230 (2011).

[11] *Pan v. IOC Realty Specialist*, 301 Neb. 256, 918 N.W.2d 273 (2018).

for an abuse of discretion.[12] But first, we address a legal question concerning the meaning of the hold harmless provision.

### (a) Hold Harmless Provision

[5] A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.[13] Because the meaning of the hold harmless provision in the decree presents a question of law, we must reach a conclusion independent of the determination reached by the trial court.[14]

In this case, neither party contends the hold harmless provision is ambiguous, and we agree it is not. Nor do the parties necessarily disagree with the trial court's interpretation of the scope and meaning of the hold harmless agreement. We review that interpretation here, however, because this court has not yet addressed the scope of a standard hold harmless provision in a divorce decree.

The issue is not one which has generated much disagreement among courts to have considered it. Generally speaking, courts agree the scope of a hold harmless provision in a dissolution decree should be determined based on its plain language.[15] While some language can limit the scope of the hold harmless provision,[16] language that broadly requires one party to assume responsibility for a joint debt and hold the other harmless from the debt generally obligates the one responsible

---

[12] See *State on behalf of Mariah B. & Renee B., supra* note 8.

[13] *Gomez v. Gomez*, 303 Neb. 539, 930 N.W.2d 515 (2019).

[14] See *Bayne, supra* note 9.

[15] See, e.g., *Flanagan v. duMont*, 203 Vt. 503, 159 A.3d 99 (2016); *Gardner v. Gardner*, 294 P.3d 600 (Utah App. 2012); *Long, supra* note 1; *Eaton, supra* note 2.

[16] See, e.g., *Flanagan, supra* note 15, 203 Vt. at 506, 159 A.3d at 101 (finding provision in decree requiring husband to indemnify and hold wife harmless "'against the payment of any monies'" did not obligate husband until wife made payment).

for the debt to prevent financial harm to the other resulting from late or delinquent payments on the debt, including damage to the other's credit rating.[17]

Here, the plain language of the decree contained no limiting language, and it ordered Corey to pay the joint mortgage debt and to "hold [Jennifer] harmless from any debt associated with the property." We therefore agree with the trial court that the plain language of the hold harmless provision in this case required Corey to protect Jennifer from financial harm or damage related to the joint mortgage debt on the home, including harm to her credit rating resulting from Corey's failure to pay the debt as ordered.[18]

### (b) Contempt Determination

Corey does not dispute the court's factual findings that he was significantly behind on the monthly mortgage payments. He does, however, argue "there was no evidence at trial that [his] actions had actually harmed" Jennifer.[19] We understand this to suggest the evidence did not support the trial court's factual finding that Corey's late mortgage payments resulted in financial damage to Jennifer's credit rating. And we reject this suggestion, as there was ample support for this finding in the record.

Jennifer testified that her credit rating had historically been 780 to 800 and that in the summer of 2018, she learned it had fallen to 620 or 640. She attributed the drop solely to the fact

---

[17] See, e.g., *Gardner, supra* note 15, 294 P.3d at 602 (provision in divorce decree ordering wife to "'assume and pay and hold [husband] harmless from'" mortgage debt required wife to protect against financial harm such as damage to husband's credit resulting from chronically late payments); *Long, supra* note 1; *Eaton, supra* note 2.

[18] Accord *Dennis v. Dennis*, 6 Neb. App. 461, 574 N.W.2d 189 (1998) (finding former husband violated hold harmless agreement by failing to pay on joint mortgage and wife suffered financial harm when family loaned her money to avoid foreclosure).

[19] Brief for appellant at 7.

that Corey was chronically delinquent on the joint mortgage, reasoning she was current on all debts she held in her own name. We find no clear error in the trial court's factual finding that Corey's chronic delinquency on the joint mortgage harmed Jennifer's credit rating.

The only other argument Corey directs to the court's determination of contempt is a statement in his reply brief that this is "a case of first impression."[20] We understand this to be a suggestion that at the time Corey was failing to make payments on the mortgage debt, the scope of his responsibility under the hold harmless provision was not clear, and so his violation of that provision should not have been found to be willful.

[6,7] Willful disobedience is an essential element of civil contempt, and in this context, "willful" means the violation was committed intentionally, with knowledge that the act violated the court order.[21] Willfulness is a factual determination to be reviewed for clear error.[22]

Corey does not claim he did not know or did not fully understand what he was required to do under the terms of the decree and the hold harmless provision. In fact, he specifically testified to his understanding in that regard during the trial:

> Q Do you agree the hold harmless provision of your decree of dissolution means that no harm should come to Jennifer as a result of debts you were ordered to pay?
>
> A That's how I understand it, yes.
>
> Q And you agree that, among other things, lowering her credit score would be a harm that would be — have come to her?
>
> A Yes.

Given the plain language of the hold harmless provision as discussed above and Corey's admitted understanding of the scope of his responsibility under that provision, we find no

---

[20] Reply brief for appellant at 9.

[21] *Krejci v. Krejci*, 304 Neb. 302, 934 N.W.2d 179 (2019).

[22] *State on behalf of Mariah B. & Renee B., supra* note 8.

clear error in the trial court's finding that Corey willfully violated the hold harmless provision by being chronically delinquent on the mortgage debt. And to the extent Corey's assignment of error can fairly be understood to challenge the court's determination of contempt, we find no abuse of discretion.

### (c) Sanction Determination

Corey assigns it was error for the trial court to "require[] [him] to refinance [the] mortgage or sell the property." The only argument he presents in this regard is the suggestion that "[b]y requiring [Corey] to refinance or sell, the Court modified the Decree on its own with no request from a party of interest and with no evidence regarding a material change of circumstances not contemplated at the time of the divorce."[23] Corey's argument misunderstands the nature of the court's determination.

This was a civil contempt proceeding in which Jennifer sought remedial relief for Corey's violation of the hold harmless provision in the decree.[24] The trial court found Corey had violated the provision and, as a sanction, ordered him to serve 10 days in jail.

[8-10] In a civil contempt proceeding, for the sanction to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end.[25] The sanction in a civil contempt proceeding is both remedial and coercive, and when a jail sentence is imposed as a sanction, the contemnor must carry the keys to their jail cells in their own pocket.[26] In other words, a jail sanction in a civil contempt proceeding is conditioned upon the contemnor's continued noncompliance with the court order,

---

[23] Brief for appellant at 7.

[24] See *Krejci, supra* note 21.

[25] *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016).

[26] See *id.*

and the purge plan must allow the contemnor to mitigate or avoid the sanction through compliance.[27]

Here, Corey has not challenged the 10-day jail sanction imposed by the court, and to the extent he challenges the purge plan directing him either to refinance the mortgage in his own name or to sell the home, we find no abuse of discretion. This portion of the order allows Corey, through compliance with the hold harmless provision, to purge himself of contempt and avoid serving the 10-day jail sentence imposed as a sanction. The order was not a modification of the decree, as Corey suggests. The sanction imposed was both remedial and coercive in nature, and it was not an abuse of discretion.

## V. CONCLUSION

Finding no clear error in the court's factual findings and no abuse of discretion in either the court's determination of contempt or the imposition of the sanction in this case, we affirm the district court's order.

Affirmed.

---

[27] See *id.*