IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

BILDERBACK-VESS V. VESS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BONNIE J. BILDERBACK-VESS, APPELLEE,

V.

MARK A. VESS, APPELLANT.

Filed October 20, 2020.    No. A-19-1136.

Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed in part, and in part dismissed.

Mark Porto, of Porto Law Office, for appellant.

Erin M. Urbom, of Bradley Law Office, P.C., for appellee.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

INTRODUCTION

Mark A. Vess appeals from an order of the District Court for Hall County, which declined to modify his child support and alimony obligations despite finding a material change in circumstances, and which found him in contempt for failing to pay those obligations. Bonnie J. Bilderback-Vess attempts to cross-appeal, assigning error to the court's finding that a material change in circumstances had occurred. For the following reasons, we dismiss the portion of the appeal relating to the modification for lack of a final order, and we affirm with regard to the finding of contempt.

BACKGROUND

A decree dissolving Mark and Bonnie's marriage was entered by the district court in January, 2014. During the marriage, the parties adopted a child who suffers from spastic

- 1 -

quadriplegia cerebral palsy and requires care at all times. Bonnie provides all of the care for the child, and is unable to work because of his extensive care needs. The most recent support order was entered in 2017, requiring Mark to pay $1,890 per month for child support, and $500 per month in alimony. At that time, Mark was earning monthly income of $19,743. On January 31, 2019, Mark filed a complaint for modification, alleging a material change in circumstances as a result of his employer's financial problems and inability to pay Mark's compensation. An initial hearing was held on April 17, 2019. A bill of exceptions from this hearing was not included in the record supplied to us on appeal. On May 9, the district court entered an order denying Mark's "immediate request" to modify the child support and alimony, because of "the uncertain nature of Mark's income." The court ordered that the matter be set for further hearing in 6 months to determine Mark's earning capacity. The court further stated that if "at that time [the court] feels that a modification is warranted and [Mark] is entitled to retroactive relief, the Court will have the authority at its discretion to so order."

On June 21, 2019, Bonnie filed a motion for order to show cause, asking the court to direct Mark to show cause why he should not be held in contempt for willfully failing to pay his child support and alimony obligations. Trial was held on September 27 on both Mark's complaint to modify and Bonnie's contempt motion, which trial was before a different district judge than heard the evidence at the April 17 hearing. The following evidence was heard at the September 27 trial.

In 2003, during the marriage, Mark and Bonnie formed Heritage Disposal and Storage (Heritage), an ammunition disposal and storage company. Mark had the requisite federal government credentials necessary to obtain certifications to store and secure dangerous materials. In March 2014, Mark became the president of Heritage and he became the majority shareholder in August 2018.

In 2018, Heritage began experiencing cash flow problems when Mark's business partner cut off funds to Heritage. Mark had to pay several expenses out of pocket. At the time of the trial, Heritage was still in business but had filed for Chapter 11 bankruptcy in February 2019. Because of the initiation of bankruptcy proceedings, any money Heritage received or disbursed needed to be approved by a bankruptcy trustee and secured creditors. Due to the cash flow problems, Heritage stopped paying Mark's salary after November 15, 2018. Since then, Mark has only received one payment of $24,030.38 from Heritage, which was a portion of rent money received on March 28, 2019, from farmers who leased land owned by Heritage. Mark used a portion of this money to reinstate business liability insurance for Heritage, leaving him approximately $17,000. He testified that a portion of that $17,000 was used to pay his mortgage, other bills, and child support. According to the lease agreement, Heritage was to receive $45,525 in rent from the tenants again on November 1, 2019.

Due to his lack of income, Mark stopped making his required support payments in January 2019, except for monthly child support payments of $218.54 that was paid through Mark's monthly military retirement payment of $641.00. At the time of trial, Mark was delinquent in the amount of $11,305.84 in child support and $3,500 in alimony.

Mark testified that Heritage was searching for debtor in possession financing, but had been unable to obtain the necessary financing to keep the business operational, and that it was likely Heritage would eventually be turned over to the secured creditor. Mark testified that problems related to his inability to secure this financing started three years prior to trial, when his business

partner wanted to sell Heritage. However, Mark testified that he was hopeful that the business could continue operation if it were to obtain the requisite financing and bring clients in.

Mark testified that because Heritage was in the business of safekeeping dangerous materials, he was required to provide security for those materials. According to Mark, Heritage is required to have security on site both day and night, which he provides along with his son Jeremiah. Mark testified that he generally spent 5 or 6 hours per day or night at Heritage, but that he no longer tracks those hours. Mark testified that the responsibility of providing security precludes him from looking for other employment. Further, Mark testified that abandoning this responsibility would result in personal liability unless another explosive licensee took over. Mark also indicated that if Heritage was foreclosed on by the bank, he could lose his reputation and credibility in the industry, jeopardizing future job prospects in the industry.

Evidence was presented that Mark had several vehicles on his home property, including a Chrysler 300, 2008 Cadillac Escalade, 2001 Dodge truck, 1955 Chevrolet truck, 2004 Chrysler Crossfire, and a Harley-Davidson motorcycle. Mark testified that two of the vehicles were regular transportation for himself and his wife and one belonged to Heritage. Mark also testified that he had attempted to sell the motorcycle, without success. No evidence was adduced as to the value of the vehicles. Mark's home is valued at $115,213, but the outstanding balance of the mortgages on the property was significantly more than the value of the home.

Mark's bank statements were admitted into evidence, showing several transactions at Ameristar Casino, including two cash withdrawals of $2,048 on April 15, 2019. Mark testified that he used the ATM at the casino because he didn't incur any fees there, but that the money was used to repair a vehicle. Mark testified that he uses "rewards" that he generated from frequent visits to the casino prior to Heritage's financial trouble to entertain business travelers, but that he no longer generates rewards. He testified that he now only uses rewards he has left over from his prior use. Mark testified that his last visit to the casino was in May 2019, after Heritage had filed for bankruptcy and he was already behind $2,000 in his support obligations.

On November 1, 2019, the District Court entered an order finding Mark in contempt for failure to pay child support and alimony. Mark was sentenced to 60 days of incarceration commencing February 1, 2020, with the option to purge himself by paying his arrearage at any time. Further, although the district court found that Mark had shown a material change in circumstances, it did not modify his support obligations. Rather, the court found that neither party had proven Mark's earning capacity. The court ordered the parties to schedule a further hearing for the purpose of determining Mark's earning capacity.

## ASSIGNMENTS OF ERROR

Mark assigns that the district court abused its discretion in failing to modify his child support and alimony obligations. Mark also assigns that the district court abused its discretion in finding that his failure to satisfy his existing child support and alimony obligations was willful and finding that he was in contempt of those orders.

Bonnie assigns that the district court erred in determining there should be a modification of Mark's child support and alimony obligations. However, Bonnie's brief does not comply with the rules regarding cross-appeals. See Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014). Bonnie designated herself as an appellee, but did not properly designate the cross-appeal on the cover of

her brief. Further, she did not set forth the cross-appeal in a separate division of the brief as required. See *id*. See, also, *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018) (cross-appeal section of appellate brief must set forth separate title page, table of contents, statement of case, assigned errors, propositions of law, and statement of facts).

## STANDARD OF REVIEW

A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Gem City Bone & Joint v. Meister*, 306 Neb. 710, 94 N.W.2d 302 (2020).

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Braun v. Braun*, 306 Neb. 890, 947 N.W.2d 694 (2020).

## ANALYSIS

### JURISDICTION

Before reaching the legal issues presented for review, it is our duty to determine whether we have jurisdiction to decide them. *Green v. Seiffert*, 304 Neb. 212, 933 N.W.2d 590 (2020). This is the case regardless of whether the issue is raised by the parties. *Id*. For an appellate court to acquire jurisdiction over an appeal, there must be a final order or final judgment entered by the court from which the appeal is taken. *Gem City Bone & Joint v. Meister, supra*. A judgment in the final determination of the rights of the parties in an action. *Id*.

In this case, two separate proceedings were tried together before the district court; Mark's complaint for modification, and Bonnie's motion for contempt. The district court entered one order addressing both proceedings. The court's order regarding contempt was a final, appealable order. See *Belitz v. Belitz*, 21 Neb. App. 716, 842 N.W.2d 613 (2014) (application to modify custody and application for order to show cause regarding contempt were two separate pleadings and presented separate issues even though heard at same time; one sought new relief, other sought to enforce relief previously granted; each needed to be timely appealed).

However, the order with respect to the modification proceeding was not a final order as it did not determine whether Mark's support obligations should be modified. Rather, it set the matter for further hearing. When multiple issues are presented to a trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while reserving some issue or issues for later determination, the court's determination of less than all of the issues is an interlocutory order and is not a final order for purpose of an appeal. See, *Johnson v. Johnson*, 15 Neb. App. 292, 726 N.W.2d 194 (2006); *Paulsen v. Paulsen*, 10 Neb. App. 269, 634 N.W.2d 12 (2001).

Therefore, we do not have jurisdiction to address Mark's assigned error regarding the district court's failure to modify his child support and alimony obligations. Likewise, even if Bonnie had properly presented her cross-appeal, we would not have jurisdiction to address her

assertion that the district court erred in finding that Mark established a material change in circumstances.

CONTEMPT

Mark argues that the district court erred in finding that his failure to satisfy his existing child support and alimony obligations was willful and that he was in contempt of those orders. Specifically, Mark argues that the district court abused its discretion in determining that he had sufficient financial assets that could have been sold to meet his support obligations.

In its order, the district court noted that an exhibit showing the many vehicles in Mark's driveway "does not depict the driveway of an impecunious man." The court also noted Mark's ownership of his home, and that further farm cash rent payments should have been received by Heritage from which it could pay Mark. The court further found that Mark's obligations to ensure the safety of the explosives on Heritage's property could be met in such a way that he could be otherwise employed. The court found that "[Mark's] efforts to save the [Heritage] business are laudable, but the burden of those efforts appears to be being borne primarily by [Bonnie] and [the minor child] which is inappropriate." The court concluded that Mark has the financial ability to purge himself of his failure to pay ordered child support and alimony and that he has the present ability to comply with the purge plan.

Civil contempt requires willful disobedience as an essential element. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2020). "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id*. If it is impossible to comply with the order of the court, the failure to comply is not willful. *Id*. Willfulness is a factual determination to be reviewed for clear error. *Id*. Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence and without any presumptions. *Id*.

Although Mark disputes ownership of some of the vehicles at his home and notes that his home is encumbered with mortgages, we cannot say that this renders his ability to pay his support obligations impossible. As noted by Bonnie, Mark knew that Heritage was struggling several years prior to 2018 but he continued to maintain his standard of living, including regular visits to casinos. Despite his knowledge of Heritage's impending failure and his existing support obligations, Mark failed to take action to ensure that he would be able to continue paying his support obligations, including his failure to seek other employment, even on a temporary basis. Based on our review of the record, we can find no clear error in the district court's factual findings and no abuse of discretion in finding Mark in contempt.

CONCLUSION

For the reasons stated above, we affirm the district court's finding that Mark was in contempt of court for failing to pay his support obligations. We dismiss Mark and Bonnie's appeal of the order regarding Mark's complaint for modification because the district court did not enter a final, appealable order.

AFFIRMED IN PART, AND IN PART DISMISSED.