IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


EVANS V. EVANS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


LIEA EVANS, APPELLEE,

V.

MIKE A. EVANS, APPELLANT.


Filed May 11, 2021.    No. A-20-739.


Appeal from the District Court for Kimball County: DEREK C. WEIMER, Judge. Affirmed.

Katy A. Reichert, of Holyoke, Snyder, Longoria, Reichert & Rice, P.C., L.L.O., for appellant.

Leonard G. Tabor for appellee.


PIRTLE, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

## INTRODUCTION

Mike A. Evans appeals from an order of the District Court for Kimball County, which found him in contempt for failing to pay his child support obligation. For the following reasons, we affirm the decision of the district court.

## STATEMENT OF FACTS

A decree dissolving Mike's marriage to Liea Evans was entered by the district court on April 1, 2014. The parties had one child who was 11 years old at the time of the divorce. As a part of the initial decree, Mike was ordered to pay $744 per month in child support. On May 12, 2015, the court entered an order finding Mike in contempt of court for failure to pay child support. The court also lowered Mike's support obligation to $127.78 per month due to Mike's alleged injury and inability to work. However, the court found that Mike was capable of earning at least minimum

wage. On March 9, 2018, the court again found Mike in contempt for nonpayment of child support, and ordered him to pay an additional $50 per month toward the arrearage, for total support of $177.78 per month.

On May 28, 2019, the Kimball County Attorney filed an affidavit and application for an order to show cause, alleging that Mike was delinquent in child support payments with an arrearage of at least $13,427.81. The court ordered Mike to appear and show cause why he should not be held in contempt and scheduled a hearing for June 25. At the hearing on June 25, Mike requested that counsel be appointed and the hearing was continued to August 13. The hearing was continued again several times for various reasons including the request of counsel, holidays, and the COVID-19 pandemic. The hearing was finally held on August 24, 2020, and the following evidence was heard.

Liea testified that she had just started a new job as a special education paraprofessional the Monday prior to the hearing. She had no other sources of income at the time. Prior to that job, Liea worked a series of freelance odd jobs including cleaning houses, mowing lawns, and painting. A copy of Mike's child support payment history was entered into evidence, showing that as of August 18, 2020, Mike owed $14,159.03 in child support arrears and $1,403.49 in interest, totaling $15,690.30. Liea testified that she had not received any money from Mike that was not reflected in that payment history. Regarding Mike's assets, Liea explained that she and Mike bought a house in Dix, Nebraska, during the marriage, and that she received a letter sometime between 2016 and 2019 that the house debt had been paid off. Mike also independently owned a second home in Dix during the marriage. Liea opined that Mike is physically able to work.

Mike testified that at the time of the hearing, he was living in Mealy, Oklahoma, having moved there in January 2020. Mike lives with a family member for free and also does not pay for food or utilities. He is currently unemployed. Mike testified that he does not have a bank account or financial investments and that he is unable to borrow money from any financial institutions or family members.

Regarding his assets, Mike testified that there were several vehicles titled in his name, all of which were totaled or inoperable. Mike agreed that he had owned the home in Dix, identified by Liea as the home they purchased together during the marriage. Mike's testimony regarding this property was vague but he suggested that he had "signed it over" to Hannah Evans, who had been making payments on the property since 2016, when he became unable to afford the payments and taxes on the property. Mike is not married to Hannah, but she legally changed her last name to Evans. Mike was unsure if he still owned the property at the time of trial or if Hannah had already taken over ownership. Mike indicated that the home was originally purchased approximately 20 years ago for $95,000, and that the amount owed on it is "probably pretty close to the same." Leia's attorney offered into evidence a tax assessment printout on this property, but the district court sustained a hearsay objection and the document was not received in evidence.

A letter was entered into evidence showing that Mike's second home in Dix was sold by tax sale in September 2016, but that it had been redeemed in December 2019. Mike claimed that Hannah was the one who redeemed the property, however, Mike's name was listed as the property owner on this letter.

A printout of a business website and a business listing with the Miniature Dairy Goat Association were both entered into evidence, showing that Mike and Hannah Evans were the

owners of Running Drum Ranch. Printouts from the Running Drum Ranch Facebook page show that the ranch sells various products including livestock, honey, and nutritional supplements. However, when asked about this business at trial, Mike testified "that [the business] has nothing to do with [him]" and that Hannah owns the business on her own. Mike generally evaded questions about the ranch, stating that he did not have any knowledge of the ranch or the business, despite his name being on several exhibits relating to the business.

Mike testified that after high school, he worked on drilling rigs and made approximately $18 or $19 per hour, until he fell off the rig in 2010 and injured his neck and lower back. Mike has not been employed full time since that injury. Mike does not have medical records to substantiate his injury claims. He has not received any disability benefits, however, he had recently applied for social security disability benefits, and had a hearing scheduled in September 2020.

Mike was last employed in 2010 as a farmer in Cheyenne County and prior to that he had worked at an auto shop; however, neither employment lasted long because Mike claimed he was unable to stand for long without neck pain. Mike testified that he currently spends approximately ninety percent of his days sleeping and that his physical activity is limited because he gets tired and has to sit down. He testified that he has difficulties with doing basic tasks, like using the bathroom. Mike also testified that he is unable to afford to see a doctor or chiropractor, and that he is unwilling to take any medication for pain because of the cost and side effects.

On September 10, 2020, the court entered an order finding that Mike willfully and contemptuously refused to pay child support. He was ordered to pay $1,000 by October 1 and ordered to pay his regular child support of $127.78 per month thereafter, along with the additional $50 per month toward the arrearage. Further, the court provided that if Mike failed to pay the $1,000, he was ordered to serve 90 days in the Kimball County jail commencing on October 2. Mike now appeals.

## ASSIGNMENTS OF ERROR

Mike assigns that the district court erred in finding him in civil contempt of court for failure to pay child support. Mike also assigns that the district court abused its discretion in ordering a purge plan with payment amounts that were impossible for him to pay. Last, Mike assigns that the district court erred in imposing incarceration as part of the civil contempt proceedings by failing to make express findings regarding his ability to comply with the purge order.

## STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Braun v. Braun*, 306 Neb. 890, 947 N.W.2d 694 (2020).

ANALYSIS

*Contempt.*

Mike first assigns that the district court erred in finding him in contempt for failure to pay child support. Neb. Rev. Stat. § 42-358(3) (Reissue 2016) provides that "[a] rebuttable presumption of contempt shall be established if a prima facie showing is made that the court-ordered child or spousal support is delinquent." In this case, the child support payment history entered into evidence makes a prima facie showing that Mike was delinquent in his support obligation.

Willful disobedience is an essential element of civil contempt, and in this context, "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Braun v. Braun, supra.* Willfulness is a factual determination to be reviewed for clear error. *Id.* A valid child support order is evidence of the parent's ability to pay the amount specified therein, for the purposes of determining whether the parent's failure to pay support is willful, as would support a finding of civil contempt. See *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018).

In this case, there was a valid child support order that had been modified downward from the initial decree in consideration of Mike's alleged work injury. Although Mike claims he is unable to work due to his injuries, he could not substantiate those claims with medical records and only recently started the process to apply for disability benefits, despite being injured 10 years ago. Mike did not offer any evidence of attempts to secure employment within his ability or alleged limitations. Further, although Mike evaded questions regarding Running Drum Ranch, there is some evidence that he may be engaged in that business despite his claims of not being able to work. Finally, it appears that Mike may own two separate properties in Dix, despite his claims that Hannah Evans took over ownership.

Triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof. *State on behalf of Mariah B. & Renee B. v. Kyle B., supra.* In this case, although Mike testified that he was unable to work and earn money to pay his child support, the district court in its order found Mike's "testimony without evidence to corroborate the same is insufficient and incredible." In reaching this conclusion, the court noted the prior findings of contempt for Mike's failure to pay child support, the reduction in his support obligation, the lack of evidence regarding how he is supporting himself, and his "utterly inconsistent payment routine" and substantial arrearage. Given the court's specific findings regarding Mike's lack of credibility, we find no clear error in the court's factual findings and no abuse of discretion in finding Mike in contempt for failure to pay child support.

*Purge Order.*

Mike's second and third assigned errors are that the court abused its discretion in ordering a purge plan with payment amounts that were impossible for him to pay, and in imposing incarceration without making express findings regarding his ability to comply with the purge order.

A criminal or punitive sanction is invalid if imposed in a proceeding that is instituted and tried as civil contempt, because it lacks the procedural protections that the Constitution would demand in a criminal proceeding. *State on behalf of Mariah B. & Renee B. v. Kyle B., supra.* A

present inability to comply with a contempt order is a defense, not necessarily to contempt, but to the sanction of incarceration. *Id*. Though the ability to pay the purge amount is a factual question that we review for clear error, whether the facts result in a due process violation is a question of law. *Id*.

This was a civil contempt proceeding in which Leia sought remedial relief for Mike's violation of the child support orders entered in this case. In a civil contempt proceeding, for the sanction to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end. *Braun v. Braun, supra*. The sanction in a civil contempt proceeding is both remedial and coercive, and when a jail sentence is imposed as a sanction, the contemnor must carry the keys to their jail cells in their own pocket. *Id*. In other words, a jail sanction in a civil contempt proceeding is conditioned upon the contemnor's continued noncompliance with the court order, and the purge plan must allow the contemnor to mitigate or avoid the sanction through compliance. *Id*.

When a purge order involves payment of money, the sum required to purge oneself of contempt must be within the contemnor's ability to pay within the time period provided in the order, taking into consideration the assets and financial condition of the contemnor and his or her ability to raise money. *State on behalf of Mariah B. & Renee B. v. Kyle B., supra*. For the punishment to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end. *Id*. On the other hand, a criminal sanction is punitive; the sentence is determinate and unconditional, and the contemnors do not carry the keys to their jail cells in their own pockets. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). While a presumption of an ability to pay the child support order made in accordance with the Nebraska Child Support Guidelines may be relevant, it is not conclusive as to the reasonableness of the purge amount. *State on behalf of Mariah B. & Renee B. v. Kyle B., supra*. A past ability to comply with an order does not show a present ability to purge the contempt. *Id*. But past failure coupled with unpersuasive or unsupported claims of present inability is sufficient. *Id*.

Mike asserts he is unable to pay the purge amount for the same reasons he asserts that he is unable to pay his child support obligation. It is the contemnor who has the burden to assert and prove the inability to comply with the contempt order as a defense to incarceration. *Id*. The burden of both production and persuasion is on the contemnor to show the present inability to comply. *Id*. Such a showing entails attempts to exhaust all resources and assets or borrow sufficient funds and the inability to thereby secure the funds to comply with the purge order. *Id*. In general, the contemnor's inability to comply cannot be voluntarily created, for example by not diligently seeking a job at one's earning potential. *Id*. As discussed in the foregoing section, the district court found that Mike did not provide sufficient evidence to show that he is unable to work and therefore unable to pay his child support. Likewise, Mike failed to meet his burden to show his inability to comply with the contempt order.

A court that imposes incarceration as part of civil contempt proceedings must make express findings regarding the contemnor's ability to comply with the purge order, regardless of whether the contemnor is indigent, to avoid inadvertent violations of due process rights and for consistency

of procedure for both represented and nonrepresented indigent contemnors. *Sickler v. Sickler, supra*.

It is clear from the district court's order in this case, taken as a whole, that it determined Mike was able to pay the purge amount. As noted above, although Mike testified that he did not have the ability to earn income, was unable to borrow funds, and did not have any assets, the court specifically found that his testimony was not credible and that he failed to provide any supporting evidence. The court noted in its order that previous purge orders against Mike had been paid by family members or friends on his behalf. Further, the evidence at trial shows that Mike is associated with the Running Drum Ranch business in some way, despite his attempts to evade questioning about his involvement. Mike also may still own two properties in Dix, despite his unsupported claims that he had transferred ownership to Hannah Evans. The purge amount ordered, $1,000, is far less than the arrearage that has accrued in this case. We find no clear error in the court's determination that Mike has the ability to pay this amount.

Based on this record, we cannot say that the district court abused its discretion in imposing a purge order, requiring Mike to pay $1,000 by October 1, and imposing a 90-day incarceration should he fail to comply. Further, we find that Mike did not suffer any due process violation in connection with this contempt action.

CONCLUSION

For the foregoing reasons, we affirm the district court's finding that Mike was in contempt of court for failing to pay his child support obligations and imposing a purge order.

AFFIRMED.