IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

PHILMON V. PHILMON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DANIELLE M. PHILMON, APPELLEE,

V.

CARLOS W. PHILMON, APPELLANT.

Filed September 14, 2021.    No. A-20-823.

Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed.

Andrea Finnegan McChesney, of M|F Law Omaha, for appellant.

Justin A. Quinn for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Carlos W. Philmon appeals from an order of the District Court for Douglas County, which found him in contempt for failing to pay his portion of the medical and childcare expenses for the parties' minor child. For the following reasons, we affirm.

## II. STATEMENT OF FACTS

Carlos and Danielle M. Philmon were married in December 2006. One child was born of the marriage. On November 16, 2012, a decree was entered dissolving the marriage. Pursuant to the decree, Carlos and Danielle were ordered to divide all nonreimbursed medical expenses and work-related childcare expenses on behalf of the minor child with Carlos paying 28 percent and Danielle paying 72 percent.

On August 7, 2020, Danielle filed a motion asking for Carlos to appear and show cause why he should not be held in contempt for failing to reimburse Danielle for medical expenses

totaling $406.48 and daycare expenses totaling $920.08. An evidentiary hearing was held on November 13. The following evidence was received at the hearing.

Danielle testified that as the minor child's primary parent, she had incurred medical and daycare expenses over the years and had sent invoices of the payments to Carlos via both regular and certified mail. She also sent Carlos certified letters requesting reimbursement for his portion of the expenses. Two certified mail receipts, dated April 4, 2014, and November 15, 2014, were entered into evidence showing two pieces of certified mail were received, one by Carlos and one by Carlos's girlfriend. A certified letter dated April 18, 2017, was also entered into evidence with stamps indicating it had been unclaimed. An unsigned return receipt for the April 2017 letter as well as the certified mail request were also entered into evidence.

On June 15, 2020, Danielle's attorney sent an email to Carlos's attorney seeking reimbursement of medical, dental, and daycare expenses. A copy of the email was entered into evidence. The email stated that Carlos had not reimbursed Danielle for his share of daycare bills totaling $920.08, medical bills totaling $406.48, and dental bills totaling $59.22. The email contained attachments with summaries of all the expenses. Danielle testified that she did not receive any response to that email.

Danielle provided the court with copies of the summary of unreimbursed daycare expenses from 2013 through 2018, medical expenses from 2017 through 2020, and dental expenses from 2013 through 2019, including receipts for all of the charges, all of which were entered into evidence. Danielle also testified that the daycare expenses were incurred to allow her to work, and that the expenses were low because she received a discount for working at the school the child attended. The discount was reflected on statements that Danielle provided. However, due to a policy change at her workplace beginning in 2018, Danielle also incurred expenses for the minor child to attend before and after school care, resulting in an increase in daycare expenses. Danielle testified that as of the date of the hearing, Carlos had not paid her anything for the expenses nor did he offer to pay or set up a payment plan.

Carlos also testified and acknowledged that pursuant to the decree he was required to pay 28 percent of medical and work-related childcare expenses incurred for the minor child. Carlos claimed that he had always followed the decree. Carlos testified that in the past he had paid expenses for the minor child for participation in various activities and said that "[a]nytime that something has been brought to my attention that needs to be taken care of, I have taken care of it." Carlos also testified that it was his understanding that he could not claim the income tax exemptions for the minor child if he was behind on any support payments, and that because he had claimed the exemption in all of the available years since 2013 except one, he could not have known that he was behind on payments.

Carlos contested Danielle's testimony, claiming that she had not sent proof of the expenses she incurred over the years and that she was lying to the court. Carlos denied receiving any certified mail regarding expenses over the years. Carlos admitted that he did receive the email sent on June 15, 2020, via his attorney and claimed that it was the first he had ever been notified of the expenses. After receiving the email, Carlos did not make any attempt to reimburse Danielle because he was waiting for the court proceedings to take place. He also alleged that the June 2020 email did not contain a summary of the dental expenses, of which he was only recently made aware.

Carlos testified that Danielle had filed a protection order against his girlfriend. Carlos believed that Danielle's decision to file a contempt action was in response to the protection order being denied after a hearing.

Carlos testified that he did not believe that Danielle made the payments or incurred the expenses that she claimed in the summaries she provided to the court. Carlos thought that Danielle did not incur any childcare expenses as a school employee. Carlos said that because he personally did not see Danielle make the payments, he could not affirm that she made them and when he was asked if he believed she was lying about making payments he stated, "It wouldn't be the first time." However, Carlos later admitted that Danielle paid for some of the expenses because the billing statements showed the expenses having been paid with Danielle's credit card.

At the time of the hearing, Carlos was employed by the city of Omaha and he expected to earn between $35,000 and $40,000 in 2020.

Danielle requested attorney fees in the amount of $1,317.76 and provided an affidavit of the fees she incurred as part of this action.

Following the receipt of evidence, the court made the following statement from the bench regarding the testimony of the parties:

I do find [Danielle's] testimony to be credible; that she did provide notice to [Carlos] of the expenses that were being incurred and paid for by her and has over a number of years done so. Notwithstanding that, [Carlos] has failed to pay the 28 percent that is required by the decree of dissolution.

The court went on to find that Carlos willfully failed to comply with the decree and stated that it was going to order Carlos to pay the $1,434.94 arrearage plus $1,317.76 for Danielle's attorney fees. When asked by the court how much he was able to pay toward the arrearage, Carlos responded that he was able to pay $1,500 immediately and the balance at $150 per month. The court then imposed a sanction of 60 days in jail to begin August 10, 2021, with the ability of Carlos to purge the sanction by paying $1,500 toward the arrearage within 7 days and $150 per month thereafter, to be paid by August 10, 2021. A written order was entered on November 16, 2020, memorializing the above findings, but providing specific dates for the payment of the $1,500 (December 1) and the commencement of the $150 monthly payments (January 1, 2021).

Carlos now appeals.

### III. ASSIGNMENTS OF ERROR

Combined, reordered and restated, Carlos assigns that the trial court erred by (1) finding him in contempt, specifically claiming that the factual findings were insufficient to show he violated the provisions of the decree, by finding he willfully disobeyed the decree, and by failing to consider the vagueness of certain provisions of the decree; (2) not finding Danielle responsible for the first $480 of nonreimbursed health care costs; (3) imposing an excessive sanction of a 60-day jail sentence; (4) failing to consider that Danielle brought the contempt action in bad faith; (5) failing to require the parties to remediate the conflict; and (6) awarding Danielle attorney fees.

## IV. STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018). A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Id*.

A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion. *Id*.

## V. ANALYSIS

### 1. CONTEMPT

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Johnson v. Johnson*, 308 Neb. 623, 956 N.W.2d 261 (2021).

### (a) Factual Findings

Carlos first assigns that the trial court abused its discretion in finding him in contempt. Specifically, Carlos argues that the trial court committed clear error in its factual findings regarding credibility, and in finding that he had notice of the expenses prior to June 15, 2020.

There was conflicting evidence about whether Danielle kept Carlos informed of the medical and childcare expenses through the years. Danielle testified to her efforts and provided some documentary evidence of certified letters sent to Carlos and email communication between their attorneys. Carlos denied receiving any letters from Danielle and maintained that Danielle did not have to pay for childcare. Carlos agreed that he had not made any payments toward the expenses, although he claimed the June 15, 2020, email to his attorney was the first he knew of the expenses.

The trial court resolved this factual dispute in Danielle's favor, specifically finding that Carlos did have notice of the expenses at the time they were incurred and failed to make any payments to satisfy those expense. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). Accordingly, we find no clear error in the trial court's factual findings regarding the credibility of the parties and notice to Carlos of the expenses.

### (b) Willful Disobedience

Willful disobedience is an essential element of civil contempt, and in this context, "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Willfulness is a factual determination to be reviewed for clear error. *Braun v. Braun*, 306 Neb. 890, 947 N.W.2d 694 (2020). Carlos contends that the trial court erred in finding that he willfully violated the decree, specifically alleging that his failure to pay cannot be willful if he was not provided the relevant medical and childcare bills. He alleges that he was not aware of the

- 4 -

expenses until the June 2020 email, and that it was unreasonable for Danielle to wait up to 8 years to provide him notice of expenses. As noted above, the trial court resolved the conflicting evidence regarding Carlos' receipt of the expenses prior to the June 2020 email, and we have accepted the trial court's factual findings in this regard. Further, the evidence is clear that Carlos did not make any payments toward the expenses either before or after the June 2020 email was received by his attorney and the contempt proceeding was filed. And, by his own testimony, Carlos admitted that he had not made any payments toward the medical and childcare expenses prior to the contempt trial.

Upon our review, we cannot say that the trial court erred in finding that Carlos willfully violated the court order.

### (c) Vagueness of Decree

Carlos also contends that the trial court erred when it found he committed a willful violation despite the vague provisions of the decree. Specifically, Carlos contends that the decree did not provide a timeline to provide notice of expenses and that it was unreasonable for the court to allow Danielle to notify Carlos of the expenses up to 8 years after they were incurred (referring to expenses incurred in 2013). The decree did not contain a specific provision regarding the mechanism or timing for providing notice of expenses. However, this does not excuse Carlos' failure to make payments toward these expenses. Again, Carlos' argument is premised upon his assertion that he did not receive notice of the expenses until June 2020. The trial court rejected this argument, and we have accepted the trial court's determination regarding notice to Carlos. Carlos' argument that the vagueness of the decree excuses his failure to pay expenses fails.

### (d) Conclusion

The district court did not abuse its discretion in finding Carlos to be in contempt for his failure to pay medical and childcare expenses as required by the decree.

### 2. ALLOCATION OF UNCOVERED MEDICAL EXPENSES

Carlos also contends that the trial court failed to recognize clear error in the original decree of dissolution because the decree fails to require Danielle to pay the first $480 per year of unrecovered medical expenses, notwithstanding the child support guidelines in place at the time. See Neb. Ct. R. § 4-215(b) (rev. 2011). Although we do not know why the district court deviated from the child support guidelines and did not require Danielle to pay the first $480 of uncovered medical expenses, Carlos did not appeal from the 2012 decree within 30 days from its entry as required by Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2020); *Priesner v. Starry*, 300 Neb. 81, 912 N.W.2d 249 (2018) (issue decided in prior final order that neither party timely appealed from is foreclosed from review in appeal from subsequent final order in case). Because Carlos failed to appeal from the decree and challenge the provision regarding the allocation of medical expenses, we are without jurisdiction to address this matter.

### 3. EXCESSIVE SANCTION

Carlos assigns that the trial court erred by imposing a 60-day jail sentence, which he argues is excessive and punitive due to the fact that this is the first instance in which he was found to be

in contempt. He again asserts that his conduct was not willful, however, we have already determined that this finding was not in error.

In a civil contempt proceeding, for the sanction to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end. *Braun v. Braun*, 306 Neb. 890, 947 N.W.2d 694 (2020). The sanction in a civil contempt proceeding is both remedial and coercive, and when a jail sentence is imposed as a sanction, the contemnor must carry the keys to their jail cells in their own pocket. *Id*. In other words, a jail sanction in a civil contempt proceeding is conditioned upon the contemnor's continued noncompliance with the court order, and the purge plan must allow the contemnor to mitigate or avoid the sanction through compliance. *Id*. In this case, the trial court provided a purge plan that Carlos himself indicated he had the ability to pay. We find no error in the trial court's sanction imposed upon Carlos.

### 4. UNCLEAN HANDS

Carlos assigns that the trial court should have dismissed Danielle's contempt motion due to her unclean hands. Specifically Carlos alleges that Danielle brought this motion as a retaliatory action after she was denied a protection order against Carlos' girlfriend, and he asserts that Danielle has made false allegations against him in the past. Further, Carlos asserts that Danielle's actions were inequitable because she brought the action 8 years after the first of the expenses were incurred.

Under the doctrine of unclean hands, a person who comes into a court of equity to obtain relief cannot do so if he or she has acted inequitably, unfairly, or dishonestly as to the controversy in issue. *Farmington Woods Homeowners Assn. v. Wolf*, 284 Neb. 280, 817 N.W.2d 758 (2012). Generally, conduct which forms a basis for a finding of unclean hands must be willful in nature and be considered fraudulent, illegal, or unconscionable. *Id*.

In this assigned error, Carlos again relies on his contention that the trial court erred when it accepted Danielle's version of the events rather than his own. As determined and reiterated above, we find no error in the court's decision to accept Danielle's testimony over Carlos' testimony. Beyond Carlos' own theory, there was no evidence presented that Danielle's institution of the contempt proceeding was done for any inequitable reason. For these reasons, we find that the trial court did not err in failing to dismiss Danielle's contempt action due to unclean hands.

### 5. REMEDIATION

Carlos assigns that the trial court erred by hearing this matter without requiring that the parties first seek mediation for their conflict. Carlos did not ask the trial court to order mediation prior to hearing the matter. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *In re Guardianship & Conservatorship of J.F.*, 307 Neb. 452, 949 N.W.2d 496 (2020). Therefore, we need not consider this assigned error.

Further, we note that the decree in this case only required the parties to mediate conflicts regarding parenting functions, parenting time, or the terms contained with the parenting plan. There was no requirement to mediate disputes regarding medical and childcare expenses. Finally, disputes regarding such expenses are not the type of matter for court referral to mediation provided in Neb. Rev. Stat. § 43-2937 (Cum. Supp. 2020).

## 6. ATTORNEY FEES

Carlos assigns that the trial court's decision to award Danielle attorney fees was an abuse of discretion because, as argued above, he believes he should not be held in contempt. Costs, including reasonable attorney fees, can be awarded in a contempt proceeding. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018). Carlos does not assert that Danielle failed to prove her fees or that the amount was unreasonable. Instead, his sole argument is that attorney fees should not have been awarded because he should not have been found to be in contempt. As we determined above, the trial court did not abuse its discretion by finding Carlos in contempt, and we likewise find no abuse its discretion in the award of attorney fees to Danielle.

## VI. CONCLUSION

For the reasons set forth above, we affirm the decision of the trial court finding Carlos in contempt of court and awarding Danielle attorney fees. We also conclude that the sanction imposed was not excessive, that the court did not err in failing to dismiss the contempt action due to unclean hands, and that the court did not err in failing to require the parties to attend mediation.

AFFIRMED.