IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


ANTON V. ANTON


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


LANCE ANTON, APPELLEE,

V.

JENNIFER ANTON, NOW KNOWN AS JENNIFER LEONARD, APPELLANT.


Filed January 24, 2023.    No. A-22-101.


Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Eddy M. Rodell for appellant.

Andrea Finegan McChesney, of M|F Law Omaha, for appellee.


PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Jennifer Anton, now known as Jennifer Leonard, appeals from the orders of the district court for Lancaster County finding her in contempt and modifying the parenting plan related to the children she shares with her former husband, Lance Anton. Finding that Jennifer willfully violated the court's prior orders, we affirm.

## BACKGROUND

Jennifer and Lance are the parents of two children, who were age 10 and 8 at the time of the hearing on the order to show cause. A 2016 parenting plan gave the parties joint legal custody of the children, with Jennifer having primary physical custody. The plan provided that the children's principal residence was with Jennifer, whose residence was in Lincoln. The parenting plan provided Lance parenting time every other week from Saturday at 9 a.m. until Wednesday at

- 1 -

5 p.m. and one evening a week from 2 p.m. to 5 p.m. However, Lance testified his parenting time ended at 6 p.m. and that his evening parenting time occurred on Wednesdays beginning at 12 p.m.

The parenting plan required the parties to freely discuss the children's education, religious upbringing, and medical needs in an effort to reach a consensus on those issues, but in the event of an impasse, Jennifer would have final say. The plan also stated that if either party moved from their current residence and relocated to another, they were required to give notice to the other party immediately upon learning the new address.

Though not in our record, at some point prior to a January 24, 2020, hearing, Lance filed a complaint for modification. This led the district court to enter an order on April 6, finding that Jennifer had delayed vaccinations for the children and ordering the children to immediately be vaccinated in compliance with the vaccination schedule promulgated by Lincoln Public Schools (LPS). A December 22 stipulated supplemental order stated that Jennifer discovered she had misunderstood part of the LPS vaccination requirements, and that she would follow the appropriate guidelines regarding the vaccination at issue.

On September 3, 2021, Lance filed an application for an order to show cause, alleging that Jennifer had failed to comply with the April 6, 2020, order requiring the children be vaccinated according to the LPS requirements. He also alleged that Jennifer had changed the residence of the children without informing him until after they moved, that she refused to provide accurate information regarding their whereabouts, that based on conversations with the children, he believed the children were residing with Jennifer in a commune setting, and that Jennifer made the unilateral decision to homeschool without discussing it with him. He further alleged that Jennifer had been withholding parenting time from him. At a hearing on the application for an order to show cause, the following testimony was adduced.

At some point in 2020, due to the COVID-19 pandemic, the parties came to an informal agreement that Jennifer would keep the children home with her for isolation because Lance's job put him at high risk of exposure and both Lance and Jennifer had relatives at high risk. In May, the children stopped attending in-person classes at the public school, but it was Lance's understanding they were doing virtual classes. The parties mutually agreed the children would be homeschooled for the 2020-2021 school year. There was no formal agreement as to when the children would resume in-person contact with Lance. During this time, Lance regularly spoke with the children on the phone.

After Lance received his COVID-19 vaccinations in the spring of 2021, he contacted Jennifer about resuming parenting time. Although Lance requested that visits resume on May 5, Jennifer told Lance he could have visitation from 12 p.m. to 6 p.m., on May 19 and June 2. Other than that, she indicated the children's schedules were not open. Lance suggested alternate days or that he be included in the children's activities, but ultimately he received only the days Jennifer initially offered.

While Jennifer was homeschooling the children, Lance was not allowed to pick up the children until 3 p.m. on his Wednesday parenting time. According to Jennifer, the children were being schooled until that time. Lance disputed this because the children spent substantially less time on their studies when they were with him.

Jennifer stated she was caught off guard by Lance's request to resume parenting time, that she was unable to resume parenting time right away but offered some dates that worked, and that

it felt like Lance demanded parenting time immediately. She stated that when the parties mutually agreed that Lance would not exercise parenting time in 2020, there was never a date discussed as to when it would resume. Lance believed that prior to Easter, he had mentioned getting his vaccination and wanting to resume parenting time.

It was Lance's understanding that the children would return to school at LPS in August 2021 because they did not have a conversation about continuing homeschooling into the 2021-2022 school year. In accordance with the parenting plan, Jennifer notified Lance that she would take the children the week prior to school starting. Lance complied, believing that the children would be returning to school at LPS the following week.

Lance received telephone calls from the school on August 16 and August 17, 2021, inquiring why the children were not in attendance. Lance called Jennifer, but she did not answer. At 5:25 p.m. on August 17, Jennifer sent Lance a text message providing a new address for the children in Auburn, Nebraska, and informing him that she would be homeschooling the children that year. This was Lance's first notification that the children were moving and that the homeschooling would continue.

Lance did not agree with the decision regarding homeschooling and had concerns, particularly as to one of the children who had an individualized education program in the 2020 school year. Prior to August 16, 2021, Lance had contacted the children's school to see about an evaluation for that child and had been told the children were not enrolled. Believing that to be an oversight by Jennifer, Lance began the enrollment process.

There had not been a discussion about the move to Auburn, and Lance had concerns about the living arrangements there. His understanding was that the children were living in a camper, and he was worried about where they would sleep in the winter months. Based on conversations with the children, Lance believed that there was electricity, but no running water, and there was a compostable toilet. He was also concerned about the other people who would be living on the property.

Jennifer told Lance she and the children were forced to fend for themselves because Lance was behind on child support. She had sent him messages stating that the children were wondering when Lance would be sending child support. Lance believed based on those communications that Jennifer was discussing child support with the children, and he felt that was highly inappropriate. Due to surgery, Lance received his last paycheck in mid-July 2021, and by August, he was delinquent in his payments. He advised the State of Nebraska Child Support Division of his situation and agreed to make payments as he was able. At the time of the hearing on the show cause motion, Lance was still behind on child support but was on a payment plan and subject to a purge order.

Prior to the move to Auburn, Jennifer and the children lived in a house in Lincoln for 6 years. She stated she had to move because Lance failed to pay child support. While living in Lincoln, Jennifer had not been employed full time. At the time of the hearing, Jennifer stated she was a certified yoga teacher, performed housecleaning part time, and worked for a family in Tecumseh doing landscaping. However, she was unable to calculate how much money she earned from any of these jobs.

Jennifer purchased the mobile home from one of her yoga students; it was $3,000, and she was financing it through the student. Jennifer was paying $300 a month and providing free yoga

lessons to the student. The mobile home had electricity and was hooked up to water through the City of Auburn. In addition to the price of the mobile home, Jennifer paid rent of $600 to house the mobile home on the property.

Jennifer stated she received the mobile home on August 16, 2021, and then it was moved to the property on August 17, and that was when she gave Lance notice. She explained that she did not know that they would be moving to the Auburn address, and that is why she did not provide notice earlier. However, Jennifer's notice of intent to vacate that she provided to her previous landlord on June 18, listed the Auburn address as her forwarding address.

At the time of the hearing, Jennifer stated they were in the process of winterizing the mobile home so it would be insulated, it had a working furnace, and a hot water heater. In addition to Jennifer and the children, the property owners live with their daughter in a "tiny home" on the property, and Jennifer's friend lives in a farmhouse on the property with her three children.

Jennifer stated that the parties had agreed to homeschool the children since the start of the pandemic, and that she did not believe the pandemic was over. At the hearing, she provided printouts showing progress in certain curricula the children were utilizing as part of their homeschooling. Jennifer stated that even if she were to return to Lincoln, it was her intention to continue to homeschool the children as she believed they were thriving with her as their teacher.

Jennifer contacted the school in Auburn about getting the children tested; however, the school would not test the children unless they were enrolled, and neither would LPS. Jennifer would have to pay for testing if she wanted it. She preferred to have the children be assessed in "a gentle way," which she believed was happening with the online curriculum.

The district court issued an order of contempt, as well as an order modifying the parenting plan. In its order of contempt, the district court found Jennifer failed to strictly comply with the district court's orders, that she "hatched a plan" without any input or consideration of Lance to move the children to a trailer located in the farmyard of a friend and to homeschool them. While recognizing that Lance was not blameless and that his communications were less than might have been expected, the district court found Jennifer's reasons for not contacting Lance and her opinion that her plans would be in the best interests of the children were not credible. The district court stated that Lance had made several allegations as to Jennifer's actions, and the district court found those actions were in contempt of the district court's orders.

The district court ordered that Jennifer could purge herself of contempt by complying with the local court rules regarding parenting responsibility and cooperation, complying with the terms and conditions of the parenting plan as modified by the district court, and attending a second level parenting class and providing a certificate of completion to the district court.

The district court modified the parenting schedule established by the 2016 parenting plan, and specifically noted that Lance had already filed and advanced a request for modification. If Jennifer strictly complied with the terms and conditions of the order for a period of 12 months, she would have purged herself of the contempt. In the event that she failed to purge herself, and Lance submitted an affidavit reflecting her failure to do so, the district court would schedule a hearing to determine what additional sanctions would be necessary to bring Jennifer into compliance with the district court's orders.

The district court, finding a change in circumstances, modified the parenting plan to provide for joint physical and legal custody, with Lance having the final decisionmaking in the

event the parties could not reach an agreement. The district court ordered the children's residence should not be changed from Lincoln without prior written permission of the district court. The modified parenting plan provided for alternating weekly parenting time. Jennifer appeals.

## ASSIGNMENTS OF ERROR

Jennifer assigns eight errors. Combined and restated, they are as follows: the district court erred in (1) failing to provide a statement of facts in its order of contempt; (2) implicitly finding Jennifer was guilty of willful contempt and was guilty of violating the April 6, 2020, order; (3) modifying the parenting plan as part of its contempt order; and (4) imposing a purge order that did not provide a method for purging the contempt.

## STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction imposed are reviewed for abuse of discretion. *Cech v. Cech*, 30 Neb. App. 618, 971 N.W.2d 801 (2022).

## ANALYSIS

*Factual Findings.*

Jennifer argues the district court erred in failing to provide a statement of facts in its order which would permit an appellate court to make a finding as to whether the order was an abuse of discretion. We find the factual statements by the district court are sufficient for us to review the order for an abuse of discretion. The district court specifically referenced Jennifer's conduct in unilaterally moving the children to Auburn and deciding to continue to homeschool them without discussion with Lance. It also stated it found Jennifer's reasons for not contacting Lance, and her opinion that her plan was in the best interest of the children, not credible. Additionally, the district court's order stated that Lance "made several allegations as to [Jennifer's] actions and the Court finds those actions are in contempt of the Orders of this Court." The district court relied on the allegations in the application for an order to show cause as part of its order of contempt. This is sufficient to allow us to review the order.

*Willful Contempt and Violation of April 6, 2020, Order.*

Jennifer argues the district court erred in implicitly finding she was guilty of willful contempt and erred in finding that she was guilty of violating the April 6, 2020, order. She argues the only mandate in that order required that the children be vaccinated and that by the time of the hearing, they were fully vaccinated, and the issue was moot. But the application for an order to show cause, and the hearing that followed, addressed not just a violation of the April 6 order, but also violations of the parenting plan. We find clear and convincing evidence that Jennifer was in willful contempt of the district court's orders.

Contempt requires willful disobedience as an essential element. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018). "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id*. If it is impossible to comply

with the order of the court, the failure to comply is not willful. *Id*. Willfulness is a factual determination to be reviewed for clear error. *Id*. Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence and without any presumptions. *Id*.

Although the children had been vaccinated by the time of the October 25, 2021, hearing, the April 6, 2020, order required that the children be "immediately immunized." The evidence indicates that one of the children was most recently immunized 1 week before the hearing and the other child immunized in April 2021, a year after the order was issued. Jennifer failed to "immediately immunize" the children in accordance with the April 6, 2020. order.

Of greater concern, however, is Jennifer's actions as they relate to the children's education and residence. The 2016 parenting plan required the parties to freely discuss the children's education. While Jennifer was to be the final decisionmaker in the event of an impasse, an impasse could only occur if the parties discussed the matter and were unable to reach an agreement. It is clear the parties agreed the children would be homeschooled for the 2020-2021 school year but that no discussion occurred as to the 2021-2022 school year. In fact, Jennifer's August 17, 2021, text message to Lance displays a unilateral decision on her part as to the issue. Jennifer's decision to homeschool the children for the 2021-2022 school year without any discussion with Lance violated the parenting plan.

Similarly, Jennifer was required by the parenting plan to inform Lance of a change in residence immediately upon learning the new address. Jennifer claimed she did this on August 17, 2021, when the mobile home had been moved to Auburn. However, she informed her previous landlord of her new address in June. Her reason for not informing Lance about the new address until August was because she was not sure they would move there.

The district court found Jennifer's various explanations for not advising Lance earlier not credible. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). Accordingly, we find no clear error in the district court's factual findings.

The application for contempt further alleged that Jennifer withheld parenting time from Lance. While the parties had informally agreed that the children would remain with Jennifer during the pandemic due to the health conditions of various family members, Lance notified Jennifer that he had received his vaccination and wished to resume parenting time in early May 2021. He also believed that he had mentioned something prior to the May text message that requested resumption of parenting time. Despite this, Jennifer refused to provide Lance with his parenting time as ordered in the parenting plan, aside from two Wednesdays, for approximately a month. Her reasons were that she had made plans for the children to be studying away from home and had planned activities for school and camping with friends and family for the next month.

Jennifer also curtailed Lance's Wednesday parenting time by withholding visitation until 3 p.m. Although she stated that the children were being homeschooled until that time, Lance presented evidence that when the children did their homeschool lessons at his house, they were finished much earlier than 3 p.m. Whether Jennifer's reason was valid was a question of credibility for the district court to determine. Regardless of whether Jennifer withheld Wednesday parenting

time, the evidence is sufficient to conclude that she willfully withheld Lance's parenting time after he requested that it resume following his COVID-19 vaccinations.

The evidence was clear and convincing that Jennifer did not strictly comply with the April 6, 2020, order regarding immediate immunizations, unilaterally decided to continue homeschooling the children, failed to timely notify Lance of the change in residence, and denied Lance parenting time. The district court did not err in finding Jennifer in willful contempt of its orders.

*Modification of Parenting Plan.*

Jennifer argues the district court erred in modifying the parenting plan as a sanction for contempt. She contends she had no notice that issues other than the violation of the April 6, 2020, order would be heard at the hearing and that the district court did not limit its modification to the issues on which it found contempt. While Jennifer argues she had no notice that anything other than the April 6 order was at issue in the hearing on the order to show cause, this is refuted by the record. The application for an order to show cause alleged several violations, including the denial of parenting time, the decision to homeschool, and the change in residence. Those issues were not included in the April 6 order but were addressed in the parenting plan, also considered an "order" of the district court. The application for an order to show cause put Jennifer on notice that there was more at issue than the April 6 order.

 Although the order to show cause identified only the April 6, 2020, order, that does not preclude the district court from addressing additional issues raised in the application and specifically addressed at trial. Neb. Ct. R. Pldg. § 6-1115(b) (rev. 2008) provides in part that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

On the first day of trial, Jennifer's counsel made a relevancy objection to testimony about the amount of time the children spent homeschooling on the weekends, and the court overruled the objection, noting that it went to the consultation provisions of the decree. Thereafter, when trial continued a week later, Jennifer made no further objections as to the relevancy of testimony regarding homeschooling, change of residence, and parenting time. In fact, Jennifer cross-examined Lance on these issues and presented evidence on them, including information regarding the online curriculum the children were following as part of homeschooling and photographs of the mobile home in which they were living.

Even if the order to show cause did not provide notice of the additional topics, they were tried by implied consent of the parties. Jennifer's argument that she had no notice that there were issues to be tried other than the immunization issue contained in the April 6, 2020, order is without merit.

Jennifer argues the district court erred in modifying the parenting plan as a sanction for contempt, without a hearing on Lance's application for modification, and without a finding that modification was based on a material change in circumstances affecting the best interests of the children. We disagree.

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018). A court's continuing

jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding. *Id*. Contempt proceedings may both compel obedience to orders and administer the remedies to which the court has found the parties to be entitled *Id*. Where a situation exists that is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. *Id*.

Neb. Rev. Stat. § 42-364.15 (Reissue 2016) grants a court authority to enforce its orders by "enter[ing] such orders as are reasonably necessary to enforce rights of either parent *including the modification of previous court orders relating to parenting time, visitation, or other access*." (Emphasis supplied.) In *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016), the Nebraska Supreme Court found that a motion to show cause gave a custodial parent notice that she could be found in contempt for denying parenting time which then gave her notice of a possible modification pursuant to § 42-364.15. It further explained that having been given notice as required by the statute, the district court had the equitable authority, within the confines of the contempt proceeding, to modify the parenting plan as it related to issues that caused the finding of contempt. *Id*.

Lance's application and affidavit for an order to show cause alleged that Jennifer had denied him parenting time, thus complying with the requirement of § 42-364.15, and authorizing the court to enter orders reasonably necessary to enforce Lance's rights, including the modification of previous orders relating to parenting time, visitation, or other access. § 42-364.15.

The district court found that Jennifer's actions demanded some temporary change in the parenting schedule as established in the decree of dissolution. Jennifer does not identify which modifications of the parenting plan were improper but Lance presented testimony that Jennifer failed to consult with him regarding continued homeschooling of the children, failed to provide timely notice of the children's move, and deprived him of his parenting time. Therefore, changes in the parenting plan intending to remedy this behavior were appropriate. See *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020). This includes the provision granting final decisionmaking authority, restricting relocating the children's residence without a court order, and increasing Lance's parenting time. See *Vyhlidal v. Vyhlidal*, 311 Neb. 495, 973 N.W.2d 171 (2022) (holding that joint legal custody means mutual authority and responsibility of parents for making mutual fundamental decisions regarding child's welfare including decision of where child will reside). See also *Yori v. Helms, supra* (affirming modification of parenting plan in response to application for contempt as equitable relief that court was authorized to provide).

Jennifer argues that a material change in circumstances must exist prior to a court order modifying child custody and contends that her actions in moving the children to a trailer and homeschooling them cannot be considered a material change in circumstances. We note that the district court, in its order regarding the parenting plan, stated that trial on Lance's complaint to modify was held on the same dates as the contempt hearing. The motion to modify does not appear in our record, nor does any notice of hearing, and the bill of exceptions does not contain an indication from the court as to which motion was being addressed at the hearing. Thus, it is unclear whether the hearing was limited to the order to show cause or whether it encompassed the complaint to modify as well, but it appears the evidence was broad, encompassing several provisions of the parenting plan, including an alleged withholding of parenting time.

In its order on contempt, the district court stated that Jennifer's actions demanded changes in the parenting schedule and it noted that Lance "has filed and is advancing a request for modification of custody and parenting." It simultaneously entered an "Order re Parenting Plan," in which it found that there had been a change of circumstances and crafted a new parenting plan "that promotes the children's best interests." It ordered joint physical custody as opposed to the sole custody previously awarded to Jennifer and the court implemented a week on/week off parenting schedule. Based upon the evidence presented, particularly Jennifer's unilateral decisionmaking regarding relocation and education and her withholding of parenting time, we find no error in the court's modification of custody in response to Lance's motion for such relief.

We cannot say, therefore, based upon Jennifer's conduct as discussed above, that the district court's modification of the parenting plan, including a change in physical custody, was an abuse of discretion.

*Failure to Provide Method for Purging Contempt.*

Jennifer argues the district court erred in imposing a purge order that did not provide a method for purging the contempt. However, in the district court's order of contempt, it provided for Jennifer to purge herself of the contempt by complying with court rules regarding parenting responsibility and cooperation, complying with the modified parenting plan, attending a parenting class, and providing a certificate of completion of that class. The district court further ordered that if Jennifer strictly complied with the terms and conditions for 12 months, she would have purged herself of the contempt. If she failed to purge herself of the contempt, and Lance submitted an affidavit reflecting that, then the district court would schedule a hearing to determine additional sanctions. The order, therefore, provided a method for Jennifer to purge herself of the contempt and avoid further sanctions.

## CONCLUSION

We find the factual findings of the district court's order of contempt to be sufficient to allow us to review it. Having reviewed the district court's order, we find there was clear and convincing evidence that Jennifer violated the district court's orders, and the district court did not err in finding Jennifer to be in contempt. The remedial measures imposed by the order of contempt, which included a manner for Jennifer to purge herself of the contempt, were not an abuse of discretion. We affirm the orders of the district court.

AFFIRMED.