Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/22/2022 08:06 AM CST

Bryan M. Cech, appellee, v. April L.
Cech, now known as April L.
VanAndel, appellant.
___ N.W.2d ___

Filed February 15, 2022.    No. A-20-783.

1. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.
2. **Contempt: Judgments.** A judgment of contempt must state the facts constituting the contempt, and a judgment which merely states the conclusion of the court will not sustain a sentence of imprisonment for contempt.
3. **Contempt: Judgments: Appeal and Error.** An order or judgment of direct contempt must contain a statement of the facts upon which the decision is based, the purpose of this requirement being to enable the appellate court to determine, by an inspection of the record, whether a contempt has in fact been committed and whether the court had jurisdiction to punish it.
4. **Appeal and Error.** An appellate court is not obligated to engage in analysis which is not needed to adjudicate the controversy before it.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Vacated and remanded with directions.

John W. Ballew, Jr., of Ballew Hazen, P.C., L.L.O., and, on brief, Adam R. Little for appellant.

W. Gregory Lake, of Nebraska Legal Group, for appellee.

RIEDMANN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

April L. Cech, now known as April L. VanAndel, appeals from the order of the Lancaster County District Court granting Bryan M. Cech's motion for contempt and entering sanctions against her for alleged violations of the parties' dissolution decree and parenting plan. Specifically, April contends that the district court's finding that her contempt was willful was clearly erroneous, that the court abused its discretion in finding that she was in contempt of the court orders and applying punitive or excessive sanctions, and that the court relied on evidence outside the scope of the record in ruling on Bryan's motion to alter or amend. For the reasons stated herein, we vacate the district court's order finding April in contempt, the purge order, and the further order of the purge plan, and we remand the cause with directions.

## II. STATEMENT OF FACTS

### 1. BACKGROUND

April and Bryan were previously married and had one child, Addyson Cech, born in 2010. In November 2011, the district court entered a dissolution decree awarding the parties joint legal and physical custody of Addyson.

In January 2016, the district court modified the original decree awarding April sole legal and physical custody of Addyson subject to Bryan's parenting time every other weekend from Friday at 6 p.m. to Sunday at 6 p.m. Bryan filed a motion to alter or amend, which was denied by the court except for decreasing Bryan's child support. In its order governing Bryan's motion to alter or amend, the district court noted that Bryan had made serious allegations regarding April's alleged violation of the provisions for the "*Parental Communications* and *Resolution of Conflict*" rules.

Of serious concern is [Bryan's] claim that [April] has failed to comply with the . . . *Parental Communications* and *Resolution of Conflict* provisions set forth in the Parenting Plan attached to the court's Order. Specifically, [Bryan] claims [April] has refused to facilitate communication and parenting time after the entry of the Order and that she has continually used profanity, communication blocking and [had] volatile exchanges with [Bryan]. [Bryan's] written argument to the court included some written materials in support of the motions at issue which suggest the behavior of [April] has been improper and in violation of the Order and the court's Local Rules as to Parental Responsibilities and Cooperation (attached hereto). The court is deeply troubled by this information. Such behavior, if true, is contrary to the best interest of the minor child. However, the court does not find a new trial should be ordered on this basis. To the extent [April] fails to follow the court's Order and the Local Rules of this jurisdiction as to parenting responsibilities and cooperation, [April] risks creating the basis upon which a court might enter a change relative to custody or parenting time in the future.

In June 2019, the parties stipulated to a modification and parenting plan which was approved by the court. The parenting plan required the parties to communicate regarding Addyson's school, activities, and medical needs; be on time to parenting time exchanges and notify if there are any delays; not schedule activities during the other parent's visitation; and use utmost cooperation when dealing with each other. The primary form of communication between the parties, as determined in the plan, was to occur via "written electronic form through the app found at talkingparents.com (or some other form of communication)." Additionally, the plan provided that the parties were to communicate "in a respectful and businesslike manner without language that is derogatory, accusatory, or inflammatory." The plan also provided each parent with "reasonable

and liberal telephone contact with the minor child during normal waking hours of the minor child when the minor child is with the other parent." This parenting plan is the subject of the contempt violations.

### 2. Motion for Contempt

In February 2020, Bryan filed a motion for contempt and a supporting affidavit, alleging that April had violated the parenting plan. Bryan alleged specific violations of paragraphs 8, 10 through 14, 16, 17, 24, and 26 through 28 of the parenting plan, as well as April's violation of the local rules of the jurisdiction relating to parenting responsibilities and cooperation. Bryan contended that April refused to cooperate in fundamental decisionmaking; made unilateral decisions; used disparaging language; failed to keep Bryan informed of school, activities, and medical updates; refused to use the coparenting application to communicate; did not communicate in a "business-like manner"; listened in on telephone calls between Bryan and Addyson; did not permit Bryan the right of first refusal to watch Addyson when April was working; did not update appointments or events in the coparenting application; did not seek agreement with Bryan on enrollment in activities; and did not schedule appointments using the scheduling conference method. April filed a cross-motion for contempt, which alleged that Bryan inquired into April's affairs and interrogated Addyson in violation of paragraph 10, failed to inform April of medical issues as required in paragraph 12, refused to communicate via other means as permitted in paragraph 16, refused to allow April to have telephone contact as required in paragraph 17, refused to ensure Addyson's attendance in activities according to paragraph 27, unreasonably withheld consent for appointments to be scheduled in violation of paragraph 28, and did not first use mediation as required in paragraph 35.

The court scheduled a show cause hearing on both parties' motions for July 29, 2020. However, prior to the hearing, the court entered a temporary order in which the court updated

the parenting time schedule, preserved all previous orders and parenting plans, and required the parties to cooperate with each other. The court ordered the parties to abide by the temporary order and indicated their failure to do so was punishable by "all remedies available to the Court, including contempt."

### 3. Contempt Hearing

The show cause hearing on both parties' motion for contempt was held as scheduled on July 29, 2020. Both April and Bryan provided testimony regarding the allegations of contempt. The court received into evidence the June 2019 parenting plan, text conversations between the parties, the coparenting application conversations, calendar entries, photographs, and work schedules. The court entered an order the following day finding April in "willful and contumacious contempt," while scheduling an August 4 hearing for imposition for "remedies and sanctions, as well as, [April's] plan for the purge of any sanctions."

### 4. Orders

The court entered three orders regarding the contempt proceedings as they related to April. The first order, dated July 30, 2020, found April in contempt and set the matter for a hearing on possible sanctions. Following that hearing, on August 13, the court entered its order for sanctions against April and, additionally, in a separate order, denied April's cross-motion for contempt relating to Bryan based upon its finding that April did not make a showing of willful and contumacious violations of the court's order. Then, following a motion to alter or amend filed by Bryan requesting further sanctions, the court on October 14 entered its further order. The respective orders are quoted under subsections (a), (b), and (c) below.

### (a) July 2020 Order of Contempt

The first order dated July 30, 2020, finding April in contempt stated:

This matter came before the Court on June 30, 2020 . . . . The Court, being fully advised, enters the following findings and order.

[Bryan] alleged that [April] has been in contempt of this Court because [April] has failed to comply with the prior Orders of the Court. Upon consideration of the file, records, and the evidence, the Court finds that [April] was, at the times material hereto, in willful and contumacious contempt of the orders of this Court.

The recent Supreme Court decision in ***Smeal Fire Apparatus Co. v. Kreikemeier***, 279 Neb. 661, 675-76[, 782 N.W.2d 848, 861-63] (2010)[, *disapproved, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012),] made some fairly sweeping changes to the civil contempt landscape. It is with the backdrop of ***Smeal*** and the increased ability of the Court to consider appropriate remedies that this Court now sets a hearing for the consideration of remedies and sanctions.

Therefore, having found [April] in contempt the Court sets the matter of the remedies and sanctions, as well as [April's] plan for the purge of any sanction as follows: . . . .

[April] is ordered to appear at that date and time.

To the extent there has not been an agreement prior to the hearing, the parties shall be prepared to propose the remedies and sanctions to be adopted by the Court, including the payment of reasonable attorney's fees and the plan for [April] to be purged of the contempt.

(Emphasis in original.)

(b) Order for Sanctions

Following the entry of the order of contempt, the district court set the matter for a hearing to determine sanctions to be imposed and discussed a plan for the parties to be able to provide thoughts on an appropriate sanction. The court's August 13, 2020, order for sanctions provided:

The violations are serious as reflected by the past and recent record. [April] appears to be a good mother with

one exception - she has done a poor job of co-parenting. That exception tarnishes her qualities as a parent, is serious, and is contrary to the best interests of the minor child she parents. She has been admonished more than once. [April] has generally only been compliant when a show cause hearing is threatened or looming. Certainly, there is evidence that reflects [Bryan's] fault in provoking [April] in certain ways, but she simply has not responded to those provocations calmly, thoughtfully, and cooperatively.

The Nebraska Supreme Court decision in *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 675-76[, 782 N.W.2d 848, 861-63] (2010)[, *disapproved, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012),] made some fairly sweeping changes to the civil contempt landscape. It is with the backdrop of *Smeal* and the increased ability of the Court to consider appropriate remedies that this Court now sets a hearing for the consideration of remedies and sanctions.

One of the purge remedies available to the Court was a change in custody. There is legal authority to do so. A court's continuing jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). Where a situation exists that is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006).

Further, Nebraska law provides, in part: "Upon the filing of a motion which is accompanied by an affidavit stating that either parent has unreasonably withheld or interfered with the exercise of the court order after notice to the parent and hearing, the court shall enter such orders as are reasonably necessary to enforce rights of either parent **including the modification of previous court orders relating to parenting time, visitation, or other**

**access**. The court may use contempt powers to enforce its court orders relating to parenting time, visitation, or other access." Neb. Rev. Stat. § 42-364.15 (emphasis added).

While the Court has some inclination to change custody, it does not appear to be in the best interests of the minor child to make such a change at this moment in time. Further, [Bryan] has not asked for a jail commitment for understandable reasons. (However, it should not be lost on [April] that this Court has, in the past, ordered such a commitment in these sorts of cases.)

Yet, something significant must be done.

IT IS THEREFORE ORDERED AS FOLLOWS:

A. That [April] may purge herself of the contempt as follows:

1. <u>Compliance:</u> [April] shall strictly comply with Appendix 4 of the Rules of the District Court for the Third Judicial District regarding Parenting Responsibility and Cooperation.

2. <u>Counselling/Class</u>: Within 90 days of the date of this Order, [April] shall have completed a second (2nd) level parenting education course in person at her cost. . . .

3. <u>Attorney fees</u>: [April] shall pay [Bryan] $2,400 toward [Bryan's] attorney fees. [April] shall pay no less than $200.00 per month beginning September 1, 2020 and each month thereafter until paid in full.

4. <u>Attitude</u>: With the expectation that it might be reciprocated, [April] shall show flexibility and shall work with [Bryan] so that the fixed parenting schedule may be adjusted or temporarily modified in length, timing, or terms upon reasonable advance notice, when agreed and appropriate.

If [April] strictly complies with the terms and conditions of this Order for a period of 18 months, [April] shall have purged herself of the contempt. However, in the event [April] fails to purge herself of the contempt, and [Bryan] submits a proper affidavit reflecting [April's]

failure to so purge the contempt, the Court will sched-
ule a hearing to determine what additional sanctions may
be necessary to bring [April] into compliance with the
Orders of the Court.

B. Additionally, the actions of [April] demand some
change in the parenting schedule. Therefore, the parent-
ing plan of the parties shall be modified. Notwithstanding
anything to the contrary in any prior Order of the Court:

[Bryan] shall exercise parenting time with the minor
child during the summer school vacation (using the in
person, published schedule of the Lincoln, Nebraska,
public schools) as follows: [Bryan] shall have summer
parenting time commencing one calendar week following
the release of the minor child for the summer until one
calendar week before school resumes. During [Bryan's]
summer parenting time [April] shall have two weeks of
uninterrupted parenting time with the minor child begin-
ning at 5:00 pm on the third Sunday in July each year.

(Emphasis in original.)

(c) October 2020 Order

In August 2020, Bryan filed a "Motion to Reconsider, Alter,
Amend, Vacate or Set [Aside the Judgment] and Parenting
Plan" due to additional violations by April. Bryan alleged that
April requested, via her attorney, to switch weekend parenting
time; alleged that April failed to accommodate Bryan's request
to "delay drop off" due to inclement weather; and challenged
Addyson's indication to Bryan that she did not want to live
with him during the summer. Bryan requested clarification
governing April's expectations for Addyson to attend certain
summer activities during Bryan's parenting time, since the
court failed to address them. Bryan further requested custody
of Addyson and entry of an order permitting him to enroll
Addyson in therapy. April objected to Bryan's motion because
the motion contained confidential communications regarding

settlement, referenced evidence not presented at trial, and attempted to improperly alter the parenting plan.

Following a hearing held on October 14, 2020, the district court entered an order that did not make further factual findings but found further contempt by April and granted Bryan's motion in part, and in part denied it. In its October 14 order, the court specifically found:

The Parenting Plan of the parties, entered on the 27th day of June, 2019, shall be modified.

Notwithstanding anything to the contrary in any prior Order of the Court:

1. [Bryan] shall exercise parenting time with the minor child during the summer school vacation (using the in person, published schedule of the school in which the minor child is enrolled) as follows: [Bryan] shall have summer parenting time commencing one calendar week following the release of the minor child for the summer until one calendar week before school resumes. During [Bryan's] summer parenting time [April] shall have two weeks of uninterrupted parenting time with the minor child beginning at 5:00 pm on the third Sunday in July each year and concluding at 5:00 pm on Sunday two weeks later.

2. Paragraph 27 of the Parenting Plan, entered on the 27th day of June, 2019, is amended and shall now read as follows: "Both parents shall confer and attempt to agree upon all extra-curricular activities in which the minor child is to participate. In the event they cannot agree, then [April] shall have final say on events occurring during the school year (using the in person, published schedule of the school in which the minor child is enrolled), while [Bryan] shall have final say on events occurring during the summer break (using the in person, published schedule of the school in which the minor child is enrolled). Neither parent shall enroll or sign the minor child up for any

event or activity which shall fall on, or interfere with, the other parent's parenting time without notice to the other party and written consent. Neither parent shall unreasonably withhold their consent without good cause.["]

3. [Bryan] shall have the sole legal right to enroll the minor child into counseling as he deems necessary and he shall be solely responsible for all costs associated with such counseling. [April] shall work and cooperate with [Bryan] in setting up all counseling sessions and she shall ensure that the minor child is available and present for any/all counseling sessions regardless of the date upon which said counseling sessions shall be set.

4. In all other respects, the Order re Purge Plan after finding Contempt, entered by the Court on August 13, 2020, remains in full force and effect.

April has timely appealed to this court challenging the court's orders finding her in contempt and imposing sanctions against her.

## III. ASSIGNMENTS OF ERROR

April assigns as error that (1) the district court abused its discretion when it found her in willful contempt of the court's orders; (2) the sanctions imposed were punitive, excessive, and an abuse of the court's discretion; and (3) the court improperly relied on evidence outside the scope of the record in ruling on Bryan's motion to alter or amend.

## IV. STANDARD OF REVIEW

[1] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Patera v. Patera*, 24 Neb. App. 425, 889 N.W.2d 624 (2017).

## V. ANALYSIS

April's first assignment of error is that the district court erred in finding that she was in willful disobedience of the court's prior dissolution decrees. In part, April takes issue with the district court's failure to make findings of fact, in connection with its ultimate conclusion, that "[u]pon consideration of the file, records, and the evidence, the Court finds that [April] was, at the times material hereto, in willful and contumacious contempt of orders of this Court." April argues that the court's complete lack of factual findings in connection with its conclusion make it difficult to explain exactly how the court erred in its analysis. April goes on to surmise that the court's findings were likely in reference to some part of the record governing her alleged failure to provide all communications on the "Talking Parents App" and goes on to explain an interpretation of paragraph 16 of the parenting plan and how she was not willfully disobedient in connection with her communications. Brief for appellant at 7.

Bryan states that the finding mentioned above presents one such possibility, but suggests there were numerous other allegations which could separately support the district court's ultimate conclusion here, and that the district court did not clearly err in whatever factual finding or findings informed the court's decision.

The court's one-sentence conclusory finding of contempt makes it difficult for this court to perform a review in the context of a case like this, where there are a series of decrees and numerous general allegations of noncompliance that relate to multiple specified portions of the decrees. For this court to review the district court's decision, to some degree, we have to speculate on what portion or portions of the decrees the district court found were directly impacted by the allegations and then further speculate on what specific evidence the court related to those portions of the court's orders in ultimately finding that April was in contempt. This becomes even more difficult when April separately assigned error to the excessiveness of

the sanction when it is unclear which allegation, portion of the decrees, or specific violation occurred in the eyes of the district court.

[2,3] In *Tastee Inn, Inc. v. Beatrice Foods Co., Inc.*, 167 Neb. 264, 270, 92 N.W.2d 664, 667 (1958), in reviewing a judgment of direct criminal contempt (contempt occurring in the court's presence), the court examined prior jurisprudential requirements in connection with similar proceedings and stated: "Gonzalez v. State, 119 Neb. 13, 226 N. W. 801 [(1929)], declares: A judgment of contempt must state the facts constituting the contempt, and a judgment which merely states the conclusion of the court will not sustain a sentence of imprisonment for contempt.'" Later in the analysis section of the opinion, the court stated:

> Annotation, 154 A. L. R. 1228, refers to very numerous decisions in support of the statement: "It has been held, in the overwhelming majority of jurisdictions, that an order or judgment of direct contempt must contain a statement of the facts upon which the decision is based, the purpose of this requirement being to enable the appellate court to determine, by an inspection of the record, whether a contempt has in fact been committed and whether the court had jurisdiction to punish it."

*Tastee Inn, Inc. v. Beatrice Foods Co., Inc.*, 167 Neb. at 273-74, 92 N.W.2d at 669.

In *State v. Harker*, 8 Neb. App. 663, 672, 600 N.W.2d 488, 495 (1999), this court cited to *Tastee Inn, Inc., supra*, and *Gonzalez v. State*, 119 Neb. 13, 226 N.W. 801 (1929), explaining:

> The requirements of a formal order stating the facts which justify the contempt finding makes sense in the light of the fact that in direct contempt there is no information, complaint, or other document showing the charges against the defendant, or the court's findings. The above authority clearly holds the conclusion of guilt is not sufficient. In the case at hand, the defendant uttered an expletive

eight times and another expletive one time. He was convicted of three acts of contempt. For double jeopardy purposes, if for no other, [the contemnor] was entitled to specific findings on which acts or combinations thereof resulted in each of the three convictions.

That is not to say there are no differences between a direct contempt criminal proceeding and a civil contempt proceeding of this nature. In the latter, there is at least a pleading which makes various allegations against the alleged contemnor from which some framework can be drawn. But in a case like this one where there are numerous general allegations focusing on multiple portions of the court's decrees that were allegedly violated, it becomes equally difficult to determine the basis of the court's contempt finding for purposes of appellate review.

We further note that in *Hossaini v. Vaelizadeh*, 283 Neb. 369, 375, 808 N.W.2d 867, 873 (2012), the Nebraska Supreme Court changed the standard of review for civil contempt orders, holding that

in a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.

[4] Without findings of fact by the district court in a case of this nature which involves multiple court orders and allegations of noncompliance, we are unable to perform a meaningful review of the factual findings, the determination of contempt, or the fairness of sanctions on a blanket conclusion that contempt has occurred without reference to anything more. Accordingly, we vacate, and remand with directions for the court to make specific findings of fact previously made in connection with its July, August, and October 2020 contempt orders. Having determined that this cause must be remanded, we need not

consider April's remaining assigned errors. An appellate court is not obligated to engage in analysis which is not needed to adjudicate the controversy before it. *Ryan v. Streck, Inc.*, 309 Neb. 98, 958 N.W.2d 703 (2021).

## VI. CONCLUSION

Having determined that the district court was required to make factual findings regarding its contempt determination, we vacate the district court's order finding April in contempt, the purge order, and the further order of the purge plan, and we remand the cause with directions for the court to enter an order with specific factual findings regarding its finding of contempt.

VACATED AND REMANDED WITH DIRECTIONS.

MOORE, Judge, participating on briefs.