IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


GILMORE HERNANDEZ V. HERNANDEZ ESQUER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ASHLEY R. GILMORE HERNANDEZ, APPELLANT,

V.

JORGE A. HERNANDEZ ESQUER, APPELLEE.


Filed November 10, 2025.    No. A-24-897.


Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Adam R. Little, of Nebraska Legal Group, for appellant.

Jorge A. Hernandez Esquer, pro se.


RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

Ashley R. Gilmore Hernandez appeals from the order of the district court for Lancaster County that found her and her ex-husband, Jorge A. Hernandez Esquer, to be in contempt of their court-ordered parenting plan. She disputes the court's finding that she was in contempt, its subsequent modification of the parenting plan, and the sanctions imposed on Jorge. For the following reasons, we affirm.

## II. BACKGROUND

Ashley and Jorge were married in November 2008. Two children were born during the marriage: Bryson Hernandez, born in 2012, and Mia Hernandez, born in 2014. Some years later, Ashley and Jorge sought to dissolve their marriage and entered into a mediated agreement.

On April 18, 2022, a decree of dissolution was entered by the district court. The parenting plan attached to the decree contained the terms of the parties' mediated agreement.

- 1 -

The plan provided that the parents would share joint legal custody, but Ashley was awarded primary physical custody of the children, subject to Jorge's parenting time. The plan also imposed restrictions on the parents and provided them with various rights, which we will discuss further as is relevant.

In June 2022, Ashley filed a verified motion for an order to show cause why Jorge should not be held in contempt for violating the parenting plan. She alleged Jorge had violated a plan provision which required him to adhere to the recommendations of the children's therapist, Dr. Amanda Setlak, for introducing the children to his then girlfriend, whom he later married during these proceedings. Ashley also alleged Jorge was in contempt because he had reactivated his social media accounts, in violation of another provision which required that he deactivate and not reactivate his accounts unless doing so was mandatory for his employment or for communication regarding the children's schooling and extracurriculars.

In August 2022, Jorge filed a verified motion for an order to show cause why Ashley should not be held in contempt of the parenting plan. Among various claims, he alleged Ashley had violated a term of the plan, which granted both parents the right to reasonable and uninterrupted phone access with the children during the other's parenting time, by hanging up his phone call with Bryson and asking invasive questions to the children over phone calls during his parenting time. He also alleged Ashley had violated another provision which required both parents not disparage the other in front of the children. He contended that, on two separate occasions, Ashley had thrown a piece of paper in his face, and accused him of not obeying Setlak, in front of Mia.

In December 2022, Ashley filed an amended verified motion for an order to show cause. In April 2023, she filed a second amended motion. Ashley alleged, among other claims, that Jorge had violated the parenting plan provision which allowed her to provide after school care for the children and granted her a right of first refusal for summer, holiday, and weekend parenting time if Jorge were working or unavailable for three or more hours. Ashley alleged he had violated this provision by allowing his girlfriend to watch the children when he was unavailable.

Jorge filed a subsequent order to show cause in April 2023. He alleged that Ashley was in contempt of the parenting plan for multiple reasons, including that she withheld his parenting time after claiming he had reactivated his social media accounts. The court issued orders to show cause on all of the parties' motions.

A hearing was held on these motions in September 2023. The court received various exhibits, including a copy of the divorce decree and parenting plan, copies of the parties' communications, both parties' depositions, Setlak's deposition, an invoice from Setlak's office, and Ashley's counsel's attorney fee affidavit. Both Ashley and Jorge testified at the hearing.

At the close of the hearing, the court elected to stay the proceedings to give the parties an opportunity "to move forward" and focus on complying with the parenting plan and acting in the children's best interests. It scheduled a future hearing to revisit the motions.

Thereafter, in February 2024, Ashley filed another verified motion for an order to show cause why Jorge was not in contempt of the parenting plan. This motion alleged that, earlier that month, Bryson had forgotten a book while with Jorge and Jorge refused to answer Ashley's calls about this. Jorge eventually met Ashley and Bryson in her driveway and Bryson got in Jorge's car to go look for the book. Ashley alleged that, during the interaction, Jorge opened his car door and

hit her with it while backing out of the driveway, and this made Bryson cry. She did not identify what specific provision of the parenting plan Jorge allegedly violated during this incident.

In June 2024, Jorge filed another application for an order to show cause why Ashley should not be held in contempt. He alleged that Ashley had misrepresented the events of the February driveway incident and that she had violated the parenting plan by disparaging him in front of the children during this event. The court issued orders to show cause on the parties' successive motions.

In June 2024, a second hearing was held on all contempt motions filed by the parties. Both parties testified and the court received exhibits, including a recording of a phone call between the parties, video recordings of the incident in Ashley's driveway, and additional records of communications between the parties.

After this hearing, the court found both parents were in contempt of the parenting plan. Jorge was found in contempt for violating the plan's provision involving introduction of his girlfriend to the children, and the provision prohibiting him from reactivating his social media accounts. Ashley was found in contempt of the provisions regarding reasonable phone conversations with the children and not disparaging the other parent in front of the children. The court explicitly denied all other requests for findings of contempt. Further, in its order, the court modified specific provisions of the parenting plan and imposed sanctions on both parents. Ashley appeals.

## III. ASSIGNMENTS OF ERROR

Ashley assigns, condensed and restated, that the district court erred by (1) finding her in contempt of the parenting plan, (2) modifying the parenting plan as a contempt sanction, and (3) ordering contempt sanctions against Jorge which were insufficient to remedy his violations of the parenting plan.

## IV. STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020).

Whether relief entered in a proceeding to enforce a parent's rights is reasonably necessary to enforce such rights is reviewed for an abuse of discretion. *Id*. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022).

## V. ANALYSIS

### 1. DISTRICT COURT DID NOT ABUSE DISCRETION BY FINDING ASHLEY IN CONTEMPT

Ashley assigns that the court's determination she was in contempt of the parenting plan constitutes an abuse of discretion. She argues that the district court's findings of fact were clearly

erroneous because it failed to make any express findings that her actions were willful or that Jorge had met his burden of proof. She contends that her actions were not willful violations of the parenting plan, and that Jorge failed to show otherwise.

(a) Express Findings Pertaining to Willfulness or Evidentiary Burden Not Required

Ashley suggests that our opinion *Cech v. Cech*, 30 Neb. App. 618, 971 N.W.2d 801 (2022), stands for the proposition that express factual findings by the district court as to willfulness or the satisfaction of a proponent's evidentiary burden are necessary to support a finding of contempt. She argues that we should find the district court erred by failing to make such findings. We decline the invitation.

In *Cech*, the trial court's order stated merely, "[u]pon consideration of the file, records, and the evidence, the Court finds that [the appellant] was, at the times material hereto, in willful and contumacious contempt of orders of this Court." *Id*. at 629, 971 N.W.2d at 808. We held that, because of the court's "one-sentence conclusory finding" in the context of a case which involved multiple court orders and allegations of noncompliance, we were unable to perform a meaningful review of the factual findings, the determination of contempt, or the fairness of sanctions on a blanket conclusion that contempt had occurred. *Id*. at 629, 971 N.W.2d at 809. We accordingly vacated the court's order and remanded with directions for the court to make specific findings of fact. See *id*.

Ashley acknowledges that unlike in *Cech, supra*, here, "the specific provisions allegedly violated were readily identifiable" and the district court identified the evidence which formed the basis for its determination that each party was in contempt. Brief for appellant at 16. However, she complains that in *Cech*, the court made a finding of willfulness, whereas here, it failed to do so.

Although the district court did not use the word "willful" or specifically state that Jorge met his burden, we are able to perform a review of the court's factual findings, determination of contempt, and the fairness of sanctions. The present case is not comparable to *Cech, supra*, for this reason. And the district court's failure to explicitly state that Ashley's actions were "willful" or that Jorge met his burden of proof does not negate its finding of contempt. See *In re Interest of Zachary D.*, 289 Neb. 763, 857 N.W.2d 323 (2015) (rejecting assertion that court's failure to specifically use term "willful" in finding party in contempt was relevant). This argument fails.

(b) District Court Did Not Clearly Err by Finding Ashley's Actions Willful

Ashley argues that, even if we determine that the language utilized in the district court's factual findings is sufficient, its determination that her actions were willful is clearly erroneous. She asserts that her conduct consisted of defensible "singular events" as opposed to a pattern of conduct, and that Jorge failed to meet his burden of proof to show her actions were willful. Brief for appellant at 16 and 17.

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id*. Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing

evidence and without any presumptions. *State on behalf of Mariah B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018). Willfulness is a factual determination to be reviewed for clear error. *Id.*

### (i) Pattern of Conduct Not Required

Ashley cites *Martin, supra*, contending that the Nebraska Supreme Court held that singular events, as opposed to an established pattern of conduct, may be defensible in a contempt proceeding. She argues that both incidents in which the court found her actions were contemptuous were defensible, singular incidents and that there was "little evidence of a pattern of conduct to support the [c]ourt's conclusion" that she was in contempt. Brief for appellant at 17.

In *Martin, supra*, the Supreme Court upheld the trial court's determination that a mother was in willful contempt because she had a consistent pattern of transferring her decision-making responsibility to her children and the father was not able to exercise his court-ordered parenting time because the children decided not to go with him. In doing so, it recognized that a singular event may have been defensible, but because there was a pattern of such behavior, the trial court did not abuse its discretion in finding her in contempt. But this does not lead to the conclusion that a single violation of a parenting plan cannot lead to contempt. See, *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012) (father found in contempt for failing to return child at end of parenting time); *Johnson v. Johnson*, 308 Neb. 623, 956 N.W.2d. 261 (2021) (father held in contempt for failing to provide documentation of education fund).

The "consistent pattern" mentioned by *Martin, supra*, has been applied in situations where contempt proceedings are based upon allegations of one party's interference with the other's parenting time. See, e.g., *Hawks v. Hawks*, 32 Neb. App. 70, 993 N.W.2d 688 (2023); *Krejci v. Krejci*, 304 Neb. 302, 934 N.W.2d 179 (2019). In those cases, the question was whether the parent willfully violated the parenting plan by consistently playing a role in the children's refusal to spend time with the other parent, or whether the children themselves were responsible for the decision. That is not the issue here. But even if it were, the Supreme Court has explained that a singular incident *may* be defensible but is not always. Contrary to Ashley's interpretation of *Martin, supra*, there is nothing which directs that a finding of willfulness will be negated because an incident of conduct is singular in nature, rather than a part of a pattern. We are unaware of any authority which says this is so, nor does Ashley provide us with any. Her argument accordingly fails.

### (ii) Jorge Met His Burden of Proof

Ashley contends Jorge did not meet his burden of proof to show her actions that the court identified as contemptuous were willful, and thus the court abused its discretion in finding her to be in contempt. She contends that there is a lack of evidence to support the court's determination that her actions during the parties' recorded phone call constituted a willful violation of the parenting plan. Further, she argues that her actions during the February 2024 driveway incident were defensible.

### a. Unreasonable Interference with Telephone Access

The district court found Ashley was in contempt of the parenting plan provision which states, "[e]ach parent shall have reasonable telephone and other media access to the children and neither parent shall unreasonably interfere with such access." Ashley asserts that, although the

court found her in contempt of the parenting plan for this reason, there was no testimony from Jorge to show this was a pattern of behavior, as opposed to a single incident, or that he was ultimately denied access to the children. She also contends she did not provide any testimony as to her intent during the phone call which would support the court's conclusion that her actions were a willful violation of the parenting plan.

We have explained evidence of a pattern of conduct is not necessary to support a contempt finding. Moreover, we note there is no requirement, per the language of the relevant provision, that Ashley's denial of Jorge's reasonable phone access to the children be part of a pattern of behavior, or that she ultimately deny Jorge telephone access to the children, for a violation to occur. Rather, to be in violation of the provision, Ashley only needed to "unreasonably interfere" with Jorge's phone access.

Ashley also argues there was no evidence regarding her intent to support the finding that her actions during the phone call constituted a willful violation of the parenting plan. However, her argument neglects to recognize that it was not the reason she took her actions, nor the outcome she desired due to her actions, but the actions themselves which placed her in contempt of the parenting plan. Ashley's willful refusal to allow Jorge to speak with his son without first answering her repeated questions denied Jorge reasonable phone access to Bryson in violation of the parenting plan, resulting in the court's finding of contempt.

In finding Ashley to be in contempt of this provision, the district court referenced the parties' recorded phone call and made the following factual finding in support of its contempt determination, "[Ashley] repeatedly denied [] telephone access when she insisted that [Jorge] discuss a fever Bryson had before she would allow him to talk to Bryson." Our review of the evidence reveals that Jorge made numerous requests to speak with Bryson, but Ashley refused to hand him the phone until Jorge answered questions to her satisfaction. The district court's factual finding is not clearly erroneous. The district court did not abuse its discretion in determining Ashley to be in contempt of the parenting plan based on this violation.

b. Disparaging Jorge in Front of Children

The court also found that Ashley was in contempt of a parenting plan provision which provided that "neither parent shall disparage or in any way denigrate the other parent, in any activity or communication involving the children." Ashley argues that, although "not done as tactfully as it could have been," she was attempting to advocate for Bryson during the driveway incident and that therefore, her actions do "not rise to the level of denigration prohibited by the [p]arenting [p]lan." Brief for appellant at 18.

In finding Ashley in contempt of this provision, the district court relied upon the video that captured this event, which was received into evidence. The district court concluded that while Bryson was present, Ashley "was yelling at [Jorge], telling him he was refusing to coparent and that his refusal to coparent was hurting his children." The parenting plan prohibited the parties from disparaging or denigrating the other in front of the children. "Disparage" is defined as "1. To speak slightingly of; to criticize (someone or something) in a way showing that one considers the subject of discussion neither good nor important. 2. To degrade in estimation by disrespectful or sneering treatment." Black's Law Dictionary 591 (12th ed. 2024). We cannot find that the district

- 6 -

court was clearly erroneous in determining that Ashley's comments and actions disparaged Jorge; therefore, we reject Ashley's argument that the court erred in finding a violation of this provision.

## 2. DISTRICT COURT DID NOT ABUSE DISCRETION BY MODIFYING PARENTING PLAN

Ashley assigns that the district court abused its discretion by modifying the parenting plan as a contempt sanction. She asserts the modifications were in error because she was not in contempt, and that even if she were, the modifications were "punitive to [her] for perceived misconduct, [rather than] reasonably necessary to enforce the rights she purportedly violated." Brief for appellant at 23.

Contempt proceedings may both compel obedience to orders and administer the remedies to which the court has found the parties to be entitled. *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020). The sanction in a civil contempt proceeding is both remedial and coercive. *Id*. In a civil contempt proceeding, for the sanction to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end. *Id*.

A court's continuing jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding. *Id*. Neb. Rev. Stat. § 42-364.15 (Reissue 2016) explicitly authorizes a court to "enter such orders as are reasonably necessary to enforce rights of either parent including the modification of previous court orders relating to parenting time, visitation, or other access" and to "use contempt powers to enforce its court orders relating to parenting time, visitation, or other access." Section 42-364.15(1) empowers a court to solve the problem. See *Yori, supra*. Where a situation exists that is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. *Id.*

Because the district court did not err by finding Ashley to be in contempt, we turn to Ashley's argument that the court erred by modifying the parenting plan.

Although the court made several modifications to the parenting plan, Ashley asserts that only three specific provisions were modified in error: a provision requiring Jorge to deactivate his social media accounts, a provision that suspended a party's parenting time if he or she violated specific provisions of the parenting plan, and a provision granting Ashley the right of first refusal for summer, holiday, or weekend parenting time if Jorge was unavailable for 3 hours or more.

As we have noted, Ashley argues the modifications were "punitive to [her] for perceived misconduct." Brief for appellant at 23. Ashley asserts the modifications were based on the court's mistaken finding that she frequently sought to control Jorge's parenting time. She contends that, under the original parenting plan, Jorge's parenting time was required to be suspended because he reactivated social media and, because the suspension of his parenting time was compulsory, the court's finding that she sought to control Jorge's parenting time was clearly erroneous. She therefore asserts that the modifications unfairly punish her for merely following the parenting plan and are not reasonably necessary to protect Jorge's rights.

Ashley misinterprets the court's finding. The court's order states that "[Ashley] is more interested in controlling [Jorge's] parenting time and punishing him by limiting his parenting time than she is in seeking a cooperative relationship" and it could not "find from the evidence that it [was] in any way in the children's best interests to reduce [Jorge's] parenting time as ha[d] been

suggested by [Ashley]." There is no mention in the order of Ashley's suspension of Jorge's parenting time and the court denied Jorge's request that she be held in contempt for having done so. Rather, the court explains that Ashley had requested that it limit Jorge's parenting time, but that it did not find any evidence to support her request. Because no evidence existed to support Ashley's request, the court determined Ashley's request was motivated by controlling or limiting Jorge's parenting time and she was uninterested in having a cooperative relationship with him.

Thus, there is no indication that the court modified the parenting plan to punish Ashley for suspending Jorge's parenting time. Further, as we will explain, the court's modifications were not punitive to Ashley. Rather they were remedial measures within the court's equitable authority to provide relief related to matters upon which contempt sanctions had been sought.

Ashley argues that the removal of the provision restricting Jorge's social media use does not remedy any violations, but rather benefits Jorge even though he willfully violated the original provision. Ashley sought to hold Jorge in contempt because he reactivated his social media accounts in violation of the parenting plan. The court found Jorge to be in contempt for this reason.

Evidence at the hearings showed that the original parenting plan included the social media restriction because Jorge had previously utilized social media to share information about Ashley and their divorce proceedings with approximately 20 people by means of a private group message. Although Jorge initially complied by deactivating his accounts, he testified that he eventually reactivated two social network platforms and had acquired additional social media accounts. He admitted that his reason for doing so were not permitted by the parenting plan. However, there was no evidence that since the divorce decree had been issued he had continued to use social media in the manner which prompted the provision. Because the social media restriction no longer served a necessary purpose, the court did not abuse its discretion by removing it. It did so to address the behavior which led to the contempt proceedings, which was within its equitable authority to do. See *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020). See, also, § 42-364.15.

Ashley also takes issue with the court's removal of the provision suspending parenting time if a parent had violated specific provisions of the parenting plan.

Jorge alleged in his April 2023 motion for an order to show cause that Ashley was in contempt of the parenting plan for withholding a week of his parenting time because she claimed he had reactivated "Facebook and/or Instagram." Although the court did not find Ashley in contempt, presumably because the parenting plan specifically required suspension of parenting time upon such a violation, the court had the authority to modify the provision to remedy the issues which prompted the contempt proceedings. See *Yori, supra*.

Moreover, when a situation which is contrary to the principles of equity exists that can be redressed in the scope of judicial action, a court of equity has the power to remedy such a situation. See *id.* Nebraska courts have repeatedly held that a custody order which allows a parent to unilaterally deny the other's parenting time if he or she determines that certain conditions have been met is an unlawful delegation of a court's judicial function to decide custody. See, *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018), *disapproved on other grounds, State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019); *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014). See, also, *Sulzle v. Sulzle*, 318 Neb. 194, 14 N.W.3d 532 (2024). Here, the provision suspending parenting time if specific parenting plan provisions were violated effectively allowed either Ashley or Jorge to deny the other's parenting time if they

subjectively determined one of these provisions had been violated. For this reason, the provision was unlawful. Accordingly, the district court had the authority to modify the provision to remedy the inequity of the situation by removing the unlawful provision.

We also reject Ashley's argument that this modification was punitive toward her. The modification removed both her and Jorge's right to restrict the other's parenting time and did not exclusively apply to her.

Finally, Ashley contests the court's modification which removed her right of first refusal of summer, holiday, or weekend parenting time. Although Ashley argues that there was no evidence or testimony to support the court's removal of this provision, her April 2023 verified motion for an order to show cause placed this provision at issue.

Ashley's second amended contempt motion asserted the parenting plan allowed her to "provide all after school day care if necessary for [Jorge's] employment" and that she should "be allowed a right of first refusal for summer, holiday or weekend parenting time if [Jorge] is working [] or unavailable for three (3) hours or more." She alleged that Jorge had violated this parenting plan provision by leaving the children in his girlfriend's sole care for multiple hours on a particular occasion, and by informing Ashley that his girlfriend would be providing all future care for the children when he was unavailable. The modification was thus reasonably related to Jorge's behavior which prompted the contempt proceedings. We therefore conclude this modification was part of the equitable relief that the court was authorized to provide. See *Yori, supra*. See, also, § 42-364.15.

The district court did not abuse its discretion by modifying these provisions of the parenting plan. Ashley's arguments to the contrary fail.

### 3. DISTRICT COURT DID NOT ABUSE DISCRETION BY IMPOSING JORGE'S CONTEMPT SANCTIONS

Ashley contends that the district court's contempt sanctions against Jorge constitute an abuse of discretion. She argues the sanctions are inadequate to remedy Jorge's violations of the parenting plan because they are insufficiently coercive to ensure his future compliance. She also argues, but does not assign, that Jorge should have been ordered to pay her attorney fees or other financial sanctions. It is a fundamental rule of appellate practice that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *State v. $18,000*, 311 Neb. 621, 974 N.W.2d 290 (2022). Because Ashley failed to assign error to the absence of attorney fees, we do not address her argument.

Ashley asserts that Jorge's sanctions are insufficient because he has already shown "blatant disregard" for the parenting plan's requirements, and they are inadequate to ensure his future compliance with the plan. Brief for appellant at 26. She specifically takes issue with "Jorge being ordered to pay for Dr. Setlak's deposition" and "[t]he only other sanction Jorge incurred," "two counts of liquidated damages of $1,500.00 each." *Id*. at 27.

When a party willfully violates a decree, coercive and remedial sanctions are appropriate. See *Vyhlidal v. Vyhlidal*, 311 Neb. 495, 973 N.W.2d 171 (2022). A civil sanction is coercive and remedial; the contemnors carry the keys of their jail cells in their own pockets, because the sentence is conditioned upon continued noncompliance and is subject to mitigation through compliance. *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022). The sanction to be imposed is reviewed for an abuse of discretion. See *Braun v. Braun*, 306 Neb. 890, 947 N.W.2d 694 (2020).

For the finding of contempt related to failing to have a follow up appointment with Setlak and adhere to her recommendations regarding introduction of the children and Jorge's girlfriend, the court sanctioned Jorge to serve 10 days in jail. Jorge could purge the order by paying the full cost of Setlak's deposition within 60 days of the order and by complying with the modified parenting plan for 12 consecutive months commencing October 1, 2024. If he failed to comply with the purge plan, and that noncompliance was certified to the court, a commitment would be issued. If Jorge was jailed pursuant to that commitment, a further hearing would need to be set to determine any further purge plan.

For the finding of contempt related to Jorge's use of social media, the court also sanctioned Jorge to serve 10 days in jail. Jorge could purge himself of the order by paying Ashley $1,500 within 60 days, but if he failed to do so, he would be jailed. He could still, however, purge himself of the jail time by paying $3,000 to be disbursed to Ashley.

Ashley argues that "Jorge being ordered to pay for Dr. Setlak's deposition is at best only a partial sanction" because he had "already contractually agreed to pay half of that amount as part of the engagement with Dr. Setlak." Brief for appellant at 27. Although Ashley cites to Setlak's deposition testimony, which confirms that each party signed a contract, our review of this contract indicates that the parties agreed Setlak would be compensated for speaking to attorneys or appearing in court "by the party responsible for [her] participation."

Here, it was Ashley who subpoenaed Setlak to provide deposition testimony and thus Ashley was responsible for her participation in the proceeding. Nothing in the record indicates that Jorge was contractually required to pay half of the deposition costs, and Ashley does not provide us with any record citation which supports her argument to the contrary. Rather, an invoice from Setlak's office shows Ashley was billed for the cost of the deposition fees, and she filed a statement of costs with the court which stated she had incurred expenses for the total costs of Setlak's time and preparation for the deposition, the cost of the deposition itself, and the cost of obtaining a copy of the marked exhibits, totaling $3,043.77.

Regardless, the portion of the court's order which directs Jorge to pay the total cost of Setlak's deposition to avoid jail time is not a sanction, but rather is part of the purge plan. The purge plan allowed Jorge "to mitigate or avoid the sanction through compliance." *Braun, supra* at 903, 947 N.W.2d at 703. We therefore cannot find the court abused its discretion regarding the purge plan.

We also acknowledge Ashley's argument that the court abused its discretion by "sanctioning" Jorge to pay her $1,500 in liquidated damages. She asserts it is inadequate because he was already required to do so under the terms of the parenting plan. Once again, the requirement that Jorge pay these liquidated damages was not a sanction, but part of the purge plan. We cannot find the court abused its discretion by imposing this purge plan.

We have explained the court-imposed jail sentences are the sanctions placed on Jorge, not the financial obligations. Although not specifically argued, for the sake of completeness, we also determine that the court did not abuse its discretion by imposing the jail-time sanctions.

## VI. CONCLUSION

For the reasons stated above, we affirm the order of the district court.

AFFIRMED.